UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LIBERTY CORPORATE CAPITAL, LTD., )
    Plaintiff )
) Civil Action No.: 1:09-cv-765
    v. )
)
DELTA PI CHAPTER OF LAMBDA CHI )
ALPHA, JOHN FERRELL CASSADY, )
AND JOHN LEE MYNHARDT, )
    Defendants )

### PLAINTIFF LIBERTY CORPORATE CAPITAL, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST JOHN FERRELL CASSADY

Plaintiff Liberty Corporate Capital, Ltd. ("Liberty"), by and through its attorneys, submits the following memorandum of law in support of its Motion for Summary Judgment Against John Ferrell Cassady ("Cassady").

## I.    Statement of Nature of Case

Liberty seeks a declaration that it owes no insurance coverage to Cassady under an insurance policy ("Policy") issued to the national fraternal organization of Lambda Chi Alpha Fraternity, Inc. ("LCA") for claims made against him in a state court lawsuit filed by John Lee Mynhardt ("Mynhardt").[1] Mynhardt alleges he was injured while Cassady and his friend, Clint Blackburn, forcibly removed him from Cassady's private residence during an open, off-campus, informal fraternity party that Mynhardt alleges violated fraternity rules (the "Party").

---

[1] Mynhardt's state-court lawsuit is referred to as the "Underlying Action."

1

Liberty owes Cassady no coverage, because he is not the "Named Insured" under the Policy and he does not meet the Policy's three part conjunctive test for insured status even though he was a member of the Delta Pi Chapter of Lambda Chi Alpha Fraternity at Elon University ("Chapter"). Mynhardt's allegations and the undisputed facts show that the Party violated fraternity rules and Cassady was not acting for the Chapter or within the scope of his duties at the Party.

Even if Cassady could prove he is an "insured," the Policy excludes coverage for all claims arising out of or in any way resulting from open, off-campus, informal fraternity parties in violation of LCA's rules, as well as all claims arising out of or resulting from an assault and/or battery.

In the alternative, Liberty seeks a declaration that any coverage conceivably owed is excess to coverage already being afforded by Cassady's homeowners' insurer.

## II.     Statement of Questions Presented

1.     Has Cassady proved he is an "insured" where Mynhardt's allegations and the undisputed facts show that Cassady was not acting in accordance with fraternity rules, was not acting on behalf of the fraternity, and was not acting within the scope of his duties?

2.     Do the Policy's exclusions for all claims arising out of or in any way resulting from violations of the fraternity's alcohol policy and assaults and/or batteries preclude coverage?

2

3. Alternatively, is the Policy's coverage excess to Cassady's homeowners' insurance?

## III. Statement of Facts

### A. LCA and the Policy

LCA is a social fraternity which had approximately 195 local chapters in 2007. *Affidavit of James R. Favor* (Ex. 1) ¶ 14.[2] It is a non-profit corporation with its corporate headquarters in Indianapolis, Indiana. *Id.* at ¶¶ 6, 14. It has been insured by Certain Underwriters at Lloyd's, London ("Underwriters") since approximately 1986. *Id.* at ¶ 7.

Around 1996, and in order to control rising insurance premiums, LCA sought to limit insurance coverage under its policy for local chapters and local chapter members to end subsidies for undergraduates' inappropriate conduct, including that arising out of the abuse of alcohol, non-fraternity events, and assaults. *Id.* at ¶ 16-18.

Underwriters and LCA negotiated the terms and conditions of the Policy. *Id.* at ¶¶ 19-26. LCA advised James R. Favor of its insurance needs, and based thereon, Mr. Favor submitted a proposed contract to both LCA and Underwriters for their review, feedback, and negotiation. *Id.* at ¶ 20. The parties ultimately arrived at an agreement in the form of a manuscript insurance contract. *Id.* at ¶ 24. A manuscript policy is the result of

---

[2] All citations will refer to the full title and exhibit the first time it is referenced. Thereafter, only the exhibit number will be referenced. "Exhibit" will be abbreviated as "Ex." throughout.

negotiated terms as opposed to most insurance policies, which are issued with standardized forms dictated by the insurer. *Id.* at ¶ 25.

The Policy at issue here was a product of those negotiations. LCA is the "First Named Insured" under the Policy. *Policy* (Ex. 3) at JRF-FSL-054. Undergraduate members and Chapters are not "Named Insureds." *Id.* Instead, the Policy contains a "Who Is Insured" endorsement which specifies that undergraduate members like Cassady may qualify as "insureds,"

> but only while acting in accordance with the "Named Insured's" policies and procedures and their own policies and procedures, and only while acting within the scope of their duties, and only with respect to their liability for activities performed by them on behalf of the "Named Insured" or of insured "Local Chapters", "Colonies", "Housing Organizations", or "Alumni Organizations".

*Id.* at JRF-FSL-064; *see also id.* at JRF-FSL-063 (defining "Undergraduate Insured").

The Policy also excludes coverage for any claim "arising out of or in any way resulting from" a violation of LCA alcohol policies or an assault. *Id.* at JRF-FSL-079, JRF-FSL-080. Finally, the Policy provides that it is excess to any other insurance and specifically references homeowners insurance. *Id.* at JRF-FSL-062, p. 10, § IV.4.

### B. Relevant LCA Policies and Procedures

The "policies and procedures" by which coverage is determined under the Policy include, *inter alia,* LCA policies and procedures addressing alcohol, risk management, and event planning. Ex. 1, ¶ 36; Ex. 3 at JRF-FSL-064, JRF-FSL-080. Relevant LCA policies and procedures include the *LCA Constitution & Statutory Code* (Ex. 5), *LCA*

4

*Risk Management Event Planning Guide* (Ex. 6), and the *LCA Manual for the High Iota* (Ex. 7) (collectively "LCA Rules"); *see also Chapter By-Laws* (Ex. 4).

LCA Rules prohibited open parties, defined as a party without a guest list that is open to non-members of the Chapter or the public without specific invitation. Ex. 5 at LCA-D00443; Ex. 6 at LCA-D00159-61; Ex. 7 at LCA-D0092, 131, 133. LCA Rules also required measures to limit access to parties and alcohol, including use of a guest list, professional security, and party monitors to specifically deal with uninvited guests and monitor potential problems. Ex. 6 at LCA-D00159-62; Ex. 7 at LCA-D0092-94, 131- 33, 144-45. LCA Rules prohibited underage drinking and kegs. *Id.* LCA Rules also required that events with alcohol end by 2:00 a.m. Ex. 6 at LCA-D00162; *see also Elon University Greek Risk Management Policies and Procedures* (Ex. 8) at 7. LCA Rules included a checklist called an Event Planning Form, which the Chapter was required to complete before any event. Ex. 6 at LCA-D00173-80, 200.

Chapter and LCA Rules also required Chapters and their members to follow Elon University's ("Elon") policies and procedures. Ex. 4 at LCA-D00453-56 (Art. III and Art. XI, § 1); Ex. 6 at LCA-D00159, 161, 193; Ex. 7 at LCA-D00092-113. Elon policies required that any student organization, including the Chapter, register with Elon any sanctioned event where alcohol will be present at least three (3) days in advance. Ex. 8 at 7; *Elon University Student Handbook* (Ex. 9) at EU00013. Elon Rules applied to off-campus events. Ex. 9 at EU0040-45, 54-55.

5

The *LCA Risk Management Event Planning Guide* warns that the Chapter and its members could lose liability insurance coverage if these rules were violated. Ex. 6 at LCA-D00179-80, 199, 203. The Chapter adopted and agreed to abide by LCA Rules pursuant to its *By-Laws*. Ex. 4 at LCA-D00453, 456 (Art. III and Art. XI, § 1).

### C. The Underlying Action

The Complaint in the Underlying Action ("Underlying Complaint")[3] alleges Mynhardt was injured on February 3, 2007 during an "open" "informal fraternity party" at an off-campus location where kegs were present and alcohol served. *Underlying Complaint* (Ex. 2) at ¶¶ 22-23, 25. It is undisputed the off-campus location, 211 N. Lee Avenue, was Cassady's private residence and not the Chapter house. *Id.* at ¶ 18; *Residential Lease* (Ex. 10); *Deposition of John Cassady Vol. I* (Ex. 11) at 123:15-18, 140:8-141:6; *Affidavit of Chapter President Michael Carnicelli* (Ex. 13) at ¶¶ 15-16; *Affidavit of Chapter Treasurer John McMackin* (Ex. 14) at ¶¶ 12-13. Mynhardt alleges that he sustained his injuries while being forcibly removed from the Party by Cassady and Clint Blackburn. Ex. 2 ¶¶ 26-33. It is undisputed that Blackburn was not a fraternity member. Ex. 11 at 148:20-21.

Mynhardt subsequently filed suit against Elon University, LCA, the Chapter, and several individuals who attended the Party, including Cassady. Ex. 2. Mynhardt alleges Cassady was negligent for hosting the Party without adequate safety policies for the

---

[3] The Underlying Complaint was amended for a fourth time on March 18, 2010. Reference to the "Underlying Complaint" is to that Fourth Amended Complaint (Ex. 2).

6

removal of guests, failed to use reasonable care in evicting him, failed to intervene to stop his eviction, negligently laid hands on Mynhardt, negligently failed to call for medical attention and negligently fled the scene. Ex. 2 at ¶¶ 105-122. Mynhardt also alleges Cassady had a duty as a social host to keep his premises free from dangerous conditions, which allegedly included wet floors, exposed wires and cords, broken doors and overcrowding. *Id*.

The key facts about the Party remain undisputed. Underage drinking was freely permitted, including by Cassady, who was underage and admitted to consuming eight beers that evening. Ex. 11 at 92:9-17, 107:16-20; Ex. 14 ¶¶ 24-26. The Party was not registered with LCA or Elon University, LCA's event planning process was not followed, and the Party had no particular purpose. Ex. 11 at 46:6-8, 114:20-23, 123:25-124:7, 128:13-129:9; *Deposition of John Cassady Vol. II* (Ex. 12) at 11:10-18; Ex. 13 at ¶¶ 23, 24; Ex. 14 at ¶¶ 20-26; *Deposition of Social Chair Robert Olson* (Ex. 22) at 51:2-52:17, 94:25-95:10; 104:21-105:3, 106:20-107:6, 131:1-4; *Local Chapter's Responses to Plaintiff's First Set of Interrogatories* (Ex. 23) at 2, 4, 6. There was unrestricted and/or public access to the Party and no guest list. Ex. 11 at 61:25-62:10; Ex. 12 at 11:22-12:19; Ex. 14 at ¶ 21; *Deposition of John Lee Mynhardt Depo. Vol. I* (Ex. 15) at 111:13- 24; *Deposition of John Lee Mynhardt Depo. Vol. II* (Ex. 16) at 200:22-201:19; Ex. 22 at 107:2-3. There was public access to alcohol and no effort to verify attendees' age. Ex. 11 at 81:23-82:21, 96:19-97:8; Ex. 14 at ¶¶ 24-26; Ex. 16 at 200:22-201:19. Beer was

7

served from a keg and drinking games were played. Ex. 11 at 65:23-66:2, 102:1-3; Ex. 12 at 12:20-21; Ex. 22 at 40:25-41:5, 43:4-9. There was no professional security or party monitors to deal with uninvited guests and monitor potential problems. Ex. 12 at 12:5-19; Ex. 14 at ¶¶ 9, 22-23. The Party continued past 2:00 am. Ex. 11 at 137:2-20; Ex. 15 at 105:17-106:4. Mynhardt's injuries occurred after 2:00 am. *Id*. The Chapter and its officers, including the President, Vice-President, and Social Chair, admit the Party was neither an official nor unofficial event. Ex. 12 at 16:23-17:14, 20:24-21:21; Ex. 13 at ¶ 17; Ex. 22 at 50:9-52:4, 98:9-12; Ex. 23 at 2, 4, 6. Cassady acknowledges that while at the Party he was not acting as the Chapter Vice President and was just spending time with his friends. Ex. 12 at 16:23-17:14, 20:24-21:21.

After substantial discovery, LCA, Elon, and Robert Olson prevailed on summary judgment. Defendants Blackburn, Caldwell, Wells, and Long settled. Plaintiff appealed LCA and Elon's summary judgment ruling and the appellate court heard argument on January 10, 2012. Mynhardt's remaining claims against Cassady and the Chapter are stayed pending a resolution of the appeal.

### D. The Coverage Action

Underwriters undertook a defense of the Local Chapter pursuant to a reservation of rights. *Reservation of Rights* (Ex. 27). They also reserved their rights with respect to Cassady and the certain other defendants named in the Underlying Action but did not defend them. *Reservation of Rights* (Ex. 26). Liberty then filed this declaratory

8

judgment action ("Coverage Action") to clarify that it has no duty under the Policy to defend or indemnify against the Underlying Action's allegations. *Complaint* (ECF No. 1). In response, Defendant Cassady filed a counterclaim for coverage. *Cassady Answer* (ECF No. 18) at 6. Former Defendants Caldwell, Long, McElroy, and Olson all stipulated to no coverage and have been dismissed from this action with prejudice. ECF No. 10, 27, 33, 34. Through stipulation, the parties agree that all discovery in the Underling Action is available in this Coverage Action.

## III. Argument

### A. Summary Judgment Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). "When a party has submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party to show that there are genuine issues of material fact." *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). The existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the disputed facts must create a *genuine* issue of *material* fact. *Id*. Further, "[m]ere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." *Id*.

9

## B. Policy Interpretation and Burdens of Proof

An Insurance policy's interpretation is a question of law. *Selective Ins. Co. of South Carolina v. Terry*, 2004 WL 1618589, * 7 (M.D.N.C. 2004). Where the contract language is clear and unambiguous, the court must enforce the policy as written, without rewriting the contract or disregarding the express language used. *Id.* at *10. Ambiguity only exists if the language at issue is fairly and reasonably susceptible to either of the constructions for which the parties contend. *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Triangle Paving, Inc.,* 973 F.Supp. 560, 563 (E.D.N.C. 1996); *Selective Ins. Co. of South Carolina*, 2004 WL 1618589 at * 8.

Where, as here, a manuscript insurance policy was negotiated between sophisticated parties. Even if an ambiguity is found, the Court should enforce the intent of the parties and not construe any ambiguity against the insurer. *See, Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co.,* 924 F.2d 633, 637–39 (7th Cir.1991); *Falmouth Nat'l Bank v. Ticor Title Ins. Co.*, 920 F.2d 1058, 1062 (1st Cir. 1990); *First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Ins. Co.*, 803 F.2d 1308, 1314 n.5 (3rd Cir. 1986); *Eastern Associated Coal Corp. v. Aetna Cas. & Sur. Co.*, 632 F.2d 1068, 1075 (3rd Cir. 1980); *Eagle Leasing Corp. v. Hartford Ins. Co.,* 540 F.2d 1257, 1261 (5th Cir. 1976); *Koch Engineering Co., Inc. v. Gibraltar Cas. Co., Inc.,* 878 F.Supp. 1286, 1288 (E.D.Mo. 1995).

A purported insured bears the initial burden of presenting a claim covered under an insurance policy, including establishing they are an "insured." *Selective Ins. Co. of South Carolina,* 2004 WL 1618589 at * 7; *Kruger v. State Farm Mut. Auto Ins. Co.*, 403 S.E. 2d 571, 572 (N.C. App. 1991); *accord*, *Liberty Corporate Capital, Ltd. v. Phi Omega Local Chapter of Phi Sigma Kappa at Minnesota State University, Moorhead, et al.*, 2008 WL 3911259 (D. Minn. 2008); *Liberty Corporate Capital, Ltd. v. El Bannan, et al.,*2009 WL 860358 (W.D. Ky. 2009). Thus, while Liberty will demonstrate that the undisputed facts prove that Cassady is not an insured under the Policy, it is Cassady's burden to show that he is an insured. *See id.*

    **C.**    **Cassady is not an "Insured" under the Policy**

Cassady is not a "Named Insured." Ex. 3 at JRF-FSL-054. Instead, he was an "Undergraduate Insured" at the time of the events alleged in the Underlying Action. *Id.* at JRF-FSL-063; Ex. 23 at 3-4. Under the Policy's "Who Is Insured" endorsement, he is only insured:

1. While acting in accordance with both LCA's policies and procedures as well as those of the Local Chapter; and
2. While acting within the scope of his duties; and
3. Only with respect to liability for activities performed by him on behalf LCA or the Local Chapter.

*Id.* at JRF-FSL-064. If Cassady cannot demonstrate that he meets every prong of the 3-part test, then coverage is not available. *Phi Omega Local Chapter of Phi Sigma Kappa,* 2008 WL 3911259 at *5 ("Who is Insured" clearly and unambiguously requires

satisfaction of all three prongs of test); *El Bannan,* 2009 WL 860358 at * 3 (same).

Cassady cannot satisfy the first prong of the "Who Is Insured" test because he cannot demonstrate that he acted in accordance with LCA policies and procedures. The allegations of the Underlying Action alone establish this was an off-campus, informal, open party with kegs where uninvited guests were allowed to enter. *Underlying Complaint* ¶ 22-23. LCA's policies and procedures specifically prohibit such parties. *See supra* § II(G) & (C).

Discovery has not identified any facts demonstrating the Party complied with LCA policies and procedures. In fact, it has only shown that the Party did not. Cassady admits the Party was off-campus and did not occur at the Chapter house. Ex. 11 at 140:8-141:6; Ex. 12 at 29:6-10, 50:14-52:1. Cassady admits that a keg was present and underage drinking was permitted, including by himself, who was under the legal drinking age at the time. Ex. 11 at 65:23-25, 92:9-17, 107:16-20; Ex. 12 at 11:22-12:24. Cassady admits there was unrestricted access to alcohol, drinking games were permitted, and the Party continued past 2 a.m. *Id.; see also*, Ex. 11 at 66:1-2, 102:1-3. Cassady admits there was no guest list and Mynhardt was permitted to freely enter the Party after 2 a.m. Ex. 11 at 61:25-62:10, 137:2-20; Ex. 12 at 12:5-24; *see also*, Ex. 15 at 111:17-112:22. Cassady admits more than 50 people attended the Party, but that no Fraternity event planning procedures were followed. Ex. 11 at 46:6-8, 61:25-62:10, 123:25-124:7, 128:13-129:9; Ex. 12 at 11:10-13:17; *List of Party Attendees* (Ex. 21). Based on this evidence, Cassady

12

cannot show that he was acting in accordance with LCA's policies and procedures.

Cassady also fails to satisfy the second and third prongs of the "Who is Insured" test because he was not acting within the scope of his duties or on behalf of LCA or an insured Chapter. A scope of duty requirement is similar to a scope of employment analysis and Cassady must show he was performing tasks for LCA that he was authorized to undertake. *Cf., Wegner v. Delly-Land Delicatessen, Inc.*, 153 S.E.2d 804, 808 (N.C. 1967) (analyzing scope of employment); *Interlocal Risk Financing Fund of North Carolina v. Ryals*, 652 S.E.2d 72, *2-3 (N.C. App. 2007). Where Cassady acts for personal motives not connected with LCA's interests, he is not acting within the scope of duties or on behalf of LCA. *Id.*

Although Cassady was the Chapter Vice President, he testified that he was not acting within the scope of his duties or performing activities on behalf of LCA or the Chapter at the Party:

> Q. What exactly were you doing at the party in furtherance of your duties as the vice president … of the Delta Pi Chapter of Lambda Chi Alpha?
> …
> A. Umm, I mean, there was really nothing to – you know, to do at the time.
> Q. Uh-huh.
> A. And as the vice president, you're – the internal vice president has the data. Therefore, you kind of look -- you know, when – when a conflict arises within the fraternity internally, or any other officer need assistance, you know, you help do that. And, you know, at the time everything was – was going fine.
> Q. So you weren't undertaking any of those duties during the course of the party?

13

A. No, sir.

Ex. 12 at 20:24-21:21; *see also, Liberty Corporate Capital v. Briggs*, 2010 WL 3119914 (S.D. Tex. 2010) (summary judgment appropriate where fraternity member failed to show he was acting within the scope of SAE's business when he drove away from a party). None of Cassady's duties involved throwing parties in violation of the rules or removing guests from such parties. In fact, LCA Rules required there to be professional security or party monitors to monitor a party of this size and to handle disturbances such as removing uninvited or unruly guests. Ex. 5 at LCA-D00443; Ex. 6 at LCA-D00159-60; Ex. 7 at LCA-D00093, 131. Of course, neither Blackburn nor Cassady were professional security. Ex. 12 at 16:5-10. In addition, an assault does not fall within the scope of one's duties and is not for the benefit of the master. *Medlin v. Bass*, 398 S.E.2d 460, 464 (N.C. 1990); *Interlocal Risk Financing Fund of North Carolina*, 652 S.E.2d at *2-3.

On the basis of the foregoing, Cassady fails to meet the Who is Insured test and Liberty owes no coverage.

### D. The Fraternity Alcohol Policy Exclusion Bars Coverage

Both the allegations of the Underlying Complaint and the undisputed facts establish that even if Cassady was an "Insured," which he is not, coverage is precluded because all of Mynhardt's allegations arise out of or result from his attendance at the Party, which violated the Fraternity Alcohol Policy.

In relevant part, the Policy provides that Undergraduate Insureds have no coverage "for any claim arising out of or in any way resulting from any 'Violation' of 'Fraternity Alcohol Policy'." Ex. 3 at JRF-FSL-080. "'Fraternity Alcohol Policy' means: The written rules, regulations, or procedures regarding alcohol which are established by the First Named Insured and the 'Local Chapter' or 'Colony' at the time of loss." *Id.* "Violation" means: a "[d]etermination by the executive board of the First Named Insured, or legal authority that some breaking, infraction, or breach of 'Fraternity Alcohol Policy' occurred." *Id.*

Three federal district courts have found that this exclusion is clear and unambiguous. *Liberty Corporate Capital, Ltd. v. Nu Zeta Local Chapter of Lambda Chi Alpha Fraternity*, 2007 WL 496736 *3-4 (M.D.Ga. Feb. 13, 2007); *Phi Omega Local Chapter*, 2008 WL 3911259 at *7 (same); *El Bannan,* 2009 WL 860358 at *3 (same). Those same three courts have held that the Court is a "legal authority" empowered to determine that a "Violation" of "Fraternity Alcohol Policy" has occurred. *Id.* All have held that the exclusion clearly extends to all claims that flow from parties in violation of those rules. *Id.*

This Court should similarly apply the exclusion to preclude coverage here. LCA's Rules regarding alcohol prohibited open, underage drinking parties, required security, prohibited parties past 2 a.m., and required compliance with Elon's rules. *See supra* § II(B) & (C). The Party did not meet these requirements. *Id.*

15

The exclusion extends to all claims "arising out of or in any way resulting from any 'Violation' of 'Fraternity Alcohol Policy.'" This clearly excludes all manner of injury or loss that is a consequence or outcome of a "Violation" of "Fraternity Alcohol Policy."[4] Under North Carolina law, the words "arising out of or in connection with," when used in an insurance policy exclusion, are construed broadly to eliminate coverage for all possible proximate causes of a loss. *Nationwide Mutual Fire Insurance Co. v. Grady*, 502 S.E.2d 648 (N.C. App. 1998); *Nationwide Mutual Fire Insurance Co. v. Nunn,* 442 S.E.2d 340 (N.C. App. 1994). Thus, it has been held that when one's very presence on another's premises was linked, associated with, or connected to a business purpose, the business purpose exclusion of a homeowners' policy would preclude coverage for all possible proximate causes of a loss. *Nunn,* 442 S.E.2d at 343-44; *Grady,* 502 S.E.2d at 652. The terms "arising out of or in any way resulting from" are equally broad. *See Laney v. Penn-America Ins. Co.*, 2005 WL 1950256 at *2-3 (N.C.App. Aug. 16, 2005)(exclusion of all claims "resulting from" excluded act extended to all negligence claims against nightclub from an assault on its premises). As Mynhardt's very presence at the Party was in association with an excluded event, the exclusion applies to all his claims, however characterized.

---

[4] By its plain and ordinary meaning, the word "any" means all and the word "way" means manner, mode, or fashion. "Resulting" means the consequence or outcome of an action. *Random House Dictionary* (2012). When combined, these words extend to all manner of injury or loss that is a consequence or outcome of the excluded act.

16

### E. The Assault and/or Battery Exclusion Also Precludes Coverage

The Policy also does not apply to "any claim arising out of or in any way resulting from any assault and/or battery." Ex. 3 at JRF-FSL-079. Thus, as noted above, coverage is excluded for all possible proximate causes arising out of an "Assault and/or Battery." *See supra*, § D; *Laney*, 2005 WL 1950256 at *2-3.

"Assault and/or Battery" means "[t]he terms as defined by the state statutes of the state in which any such claim is present." *Id.* Under North Carolina law, an assault is "a show of violence causing a reasonable apprehension of immediate bodily harm …" or "an intentional offer or attempt by force or violence to do injury to the person of another." *State v. Thompson*, 219 S.E.2d 566, 568 (N.C.App. 1975).

Mynhardt was injured while Cassady and Blackburn forcibly removed him from Cassady's house. Ex. 2 ¶¶ 26-33; Ex. 11 at 80:3-89:14, 163:24-164:6, 165:5-23; Ex. 15 at 143:20-150:16, 154:20-156:11; *Deposition of Clinton Blackburn* (Ex. 18) at 15:8-21:22, 30:18-33:25. Cassady told the police when he was first interviewed that he shoved Mynhardt when Mynhardt exited the bathroom, and, together with Blackburn, carried Mynhardt out of the house. *Cassady Felony Investigative Report* and *Police Investigation Report* (Ex. 19) at 2 of 14. Cassady later testified that he touched Mynhardt only when he assisted in carrying him out of the party. Ex. 11 at 155:7-17. Cassady and Blackburn were charged with felony Assault Inflicting Serious Bodily Injury pursuant to N.C. Gen. Stat. § 14-32.4. Ex. 19; *Felony Investigative Report of Defendant Clinton*

17

*Joseph Blackburn* (Ex. 20). Mynhardt alleges and testified that his injuries were from an assault. Ex. 2 at ¶¶ 17-33, 60, 67; Ex. 15 at 134:23-139:25, 142:20-156:23; *see also*, Ex. 17 at 27:14-30:17. As such, the Assault and/or Battery Exclusion further precludes coverage for this claim.

### F. Any Possible Insurance Coverage Under LCA's Policy is Excess to Cassady's Homeowner's Policy

Alternatively, and without waiver of Liberty's position set forth above, to the extent this Court rules that Cassady is covered under LCA's Policy, which he is not, the Policy provides no insurance until all of Cassady's homeowners' insurance is exhausted.

Where multiple policies appear to provide coverage to a common insured for the same risk, the insurers' respective obligations to pay are determined by examining each policy on its own terms. *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.,* 524 S.E.2d 558, 566 (N.C. 2000).

The Policy provides that it is excess over any other insurance, including but not limited to an Undergraduate's Homeowners' insurance. Ex. 3 at JRF-FSL-062, p. 10, Section IV.4. It further provides that there is no duty to defend any claim or "suit" another insurer has a duty to defend. *Id.* Under North Carolina law, this is an "excess" or "super escape clause" which "expressly provides that the insurance does not apply to any loss covered by other specified types of insurance…." *Aetna Cas. and Sur. Co. v. Continental Ins. Co.*, 429 S.E.2d 406, 409 (N.C.App. 1993).

18

Cassady's homeowners' insurance through Penn National Mutual Insurance Company ("Penn") states: "This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy." *Penn National Policy* (Ex. 29) at HO 00 03 10 00, page 21. This is a "basic escape clause provid[ing] that there shall be no coverage where there is other valid and collectible insurance." *Horace Mann Ins. Co. v. Continental Cas. Co.,* 284 S.E.2d 211, 213 (N.C. App. 1981).

Under North Carolina law, when a standard escape clause like that in Penn's policy competes with an excess insurance clause like that in the Policy, the carrier using the escape clause (Penn National) is held to be the primary insurer, and the carrier that uses the excess or "super escape clause" is held to be the excess insurer only. *Horace Mann Ins. Co.,* 284 S.E.2d at 213. Moreover, because the very existence of Penn's policy causes the Policy's other insurance clause "to be effective," the Penn National Policy cannot be excess over, or co-primary to, it. *See Gaston County Dyeing Machine Co.,* 524 S.E.2d at 567-68; *see also, Universal Leaf Tobacco Co., Inc. v. Oldham,* 439 S.E.2d 179, 183 (N.C.App. 1994).

As such, the Penn Policy is primary and must be exhausted before the Policy will apply.

19

Case 1:09-cv-00765-CCE-LPA   Document 54   Filed 02/20/12   Page 19 of 20

WHEREFORE, for all the reasons set forth above, Liberty respectfully requests that this Court grant its Motion for Summary Judgment and declare it owes no coverage to Cassady with respect to Mynhardt's claims.

Dated this 20th day of February 2012.

LIBERTY CORPORATE CAPITAL, LTD.

By: /s/Nolan Burkhouse
Nolan C. Burkhouse, Esq.
Paul Frank + Collins P.C.
PO Box 1307
Burlington, VT 05402-1307
(802) 658-2311

-and-

By: /s/ Stan B. Green
Stan B. Green, Esq.
N.C. State Bar No. 25539
Andrew L. Fitzgerald
N.C. State Bar No. 31522
Strauch, Fitzgerald & Green, P.C.
118 South Cherry Street
Winston-Salem, NC 27101
Telephone: (336) 725-8688
Facsimile: (336) 725-8867
afitzgerald@sfandglaw.com
sgreen@sfandglaw.com

*Attorneys for Plaintiff Liberty Corporate Capital, Ltd.*

1117688_v2: 8063-00050

20

Case 1:09-cv-00765-CCE-LPA   Document 54   Filed 02/20/12   Page 20 of 20