UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LIBERTY CORPORATE CAPITAL, LTD., ) | |
| Plaintiff ) | |
| ) | Civil Action No.: 1:09-cv-765 |
| v. ) | |
| ) | |
| DELTA PI CHAPTER OF LAMBDA CHI ) | |
| ALPHA, JOHN FERRELL CASSADY, ) | |
| AND JOHN LEE MYNHARDT, ) | |
| Defendants ) | |

**PLAINTIFF LIBERTY CORPORATE CAPITAL, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST THE DELTA PI CHAPTER OF LAMBDA CHI ALPHA FRATERNITY AT ELON UNIVERSITY**

Plaintiff Liberty Corporate Capital, Ltd. ("Liberty"), by and through its attorneys, submits the following memorandum of law in support of its Motion for Summary Judgment Against the Delta Pi Local Chapter of the Lambda Chi Alpha Fraternity at Elon University ("Chapter").

**I.   Preliminary Statement**

Liberty seeks a declaration that it owes no insurance coverage to the Chapter under an insurance policy ("Policy") issued to the national fraternal organization of Lambda Chi Alpha Fraternity, Inc. ("LCA") for allegations made against the Chapter in a state court lawsuit filed by John Lee Mynhardt ("Mynhardt").[1]  Mynhardt alleges he was injured while being forcibly removed from an off-campus private residence during an open, informal fraternity party that Mynhardt alleges violated fraternity rules (the "Party").

---

[1] Mynhardt's state-court lawsuit is hereinafter referred to as the "Underlying Action."

1

Liberty owes the Chapter no coverage because it is not the Named Insured under the Policy and because Mynhardt's allegations and the undisputed facts show that it does not meet the three part conjunctive test for insured status since the Party violated LCA rules and its members were not acting on behalf of LCA at the Party.

Even if the Chapter could show it was an "insured," the Policy excludes coverage for all claims arising out of or in any way resulting from open, off-campus, informal fraternity parties in violation of LCA rules, as well as all claims arising out of or resulting from an assault and/or battery.

Accordingly, Liberty requests the Court declare the Policy provides no possibility of coverage and allow Liberty to withdraw its defense of the Chapter.

## II. Statement of Questions Presented

1. Has the Chapter proved it is an "insured" where Mynhardt's allegations and the undisputed facts show the Party was not in accordance with LCA rules, was not acting on behalf of LCA, and was not within the Chapter's duties?

2. Do the Policy's exclusions for all claims arising out of or in any way resulting from violations of the fraternity's alcohol policy and assaults and/or batteries preclude coverage?

3. May Liberty withdraw its defense of the Chapter upon a showing no possibility of coverage?

## III. Statement of Facts

### A. LCA and the Policy

LCA is a social fraternity with approximately 195 local chapters in 2007. *Affidavit of James R. Favor* (Ex. 1) ¶ 14.[2] It is a non-profit corporation with its corporate headquarters in Indianapolis, Indiana. *Id.* at ¶¶ 6, 14. It has been insured by Certain Underwriters at Lloyd's, London ("Underwriters") since approximately 1986. *Id.* at ¶ 7.

Around 1996, and in order to control rising insurance premiums, LCA sought to limit insurance coverage under its policy for local chapters and local chapter members to end subsidies for undergraduates' inappropriate conduct, including that arising out of the abuse of alcohol, non-fraternity events, and assaults. *Id.* at ¶ 16-18.

Underwriters and LCA negotiated the terms and conditions of the Policy. *Id.* at ¶¶ 19-26. LCA advised James R. Favor of its insurance needs, and based thereon, Mr. Favor submitted a proposed contract to both LCA and Underwriters for their review, feedback, and negotiation. *Id.* at ¶ 20. The parties ultimately arrived at an agreement in the form of a manuscript insurance contract. *Id.* at ¶ 24. A manuscript policy is the result of negotiated terms as opposed to most insurance policies, which are issued with standardized forms dictated by the insurer. *Id.* at ¶ 25.

The Policy at issue here was a product of those negotiations. LCA is the "First Named Insured" under the Policy. *Policy* (Ex. 3) at JRF-FSL-054. Chapters are not

---
[2] All citations will refer to the full title and exhibit the first time it is referenced. Thereafter, only the exhibit number will be referenced. "Exhibit" will be abbreviated as "Ex." throughout.

"Named Insureds." *Id.* Instead, the Policy contains a "Who Is Insured" endorsement which specifies that the Chapter may qualify as an "insured,"

> but only while acting in accordance with the "Named Insured's" policies and procedures and their own policies and procedures, and only while acting within the scope of their duties, and only with respect to their liability for activities performed by them on behalf of the "Named Insured" or of insured "Local Chapters", "Colonies", "Housing Organizations", or "Alumni Organizations".

*Id.* at JRF-FSL-064; *see also id.* at JRF-FSL-063 (defining "Chapter").

The Policy also excludes coverage for any claim "arising out of or in any way resulting from" a violation of LCA alcohol policies or an assault. *Id.* at JRF-FSL-079, JRF-FSL-080.

### B. Relevant policies and procedures

The "policies and procedures" by which coverage is determined under the Policy include, *inter alia,* LCA policies and procedures addressing alcohol, risk management, and event planning. Ex. 1, ¶ 36; Ex. 3 at JRF-FSL-064, JRF-FSL-080. Relevant LCA policies and procedures include the *LCA Constitution & Statutory Code* (Ex. 5), *LCA Risk Management Event Planning Guide* (Ex. 6), and the *LCA Manual for the High Iota* (Ex. 7) (collectively "LCA Rules"); *see also Chapter By-Laws* (Ex. 4)(Art. III and Art. XI, § 1).

LCA Rules prohibited open parties, defined as a party without a guest list open to non-members of the Chapter or the public without specific invitation. Ex. 5 at LCA-D00443; Ex. 6 at LCA-D00159-61; Ex. 7 at LCA-D00092, 131, 133. LCA Rules also

4

required measures to limit access to parties and alcohol, including use of a guest list, professional security, and party monitors to specifically deal with uninvited guests and monitor potential problems. Ex. 6 at LCA-D00159-62; Ex. 7 at LCA-D00092-94, 131-33, 144-45. LCA Rules prohibited underage drinking and kegs. *Id.* LCA Rules also required events with alcohol to end by 2:00 a.m. Ex. 6 at LCA-D00162; *Elon University Greek Risk Management Policies and Procedures* (Ex. 8) at 7. The LCA Rules included a checklist called an Event Planning Form, which the Chapter was required to complete before any event. Ex. 6 at LCA-D00173-80, 200.

Chapter and LCA Rules also required Chapters to follow Elon University's ("Elon") policies and procedures. Ex. 4 at LCA-D00453-56; Ex. 6 at LCA-D00159, 161, 193; Ex. 7 at LCA-D00092, 131. Elon policies required that any student organization, including the Chapter, register with Elon any sanctioned event where alcohol will be present at least three (3) days in advance. Ex. 8 at 7; *Elon University Student Handbook* (Ex.9) at EU00013. Elon Rules applied to off-campus events. Ex. 9 at EU0040-45, 54-55.

The *LCA Risk Management Event Planning Guide* warns that the Chapter could lose its liability insurance coverage if these rules were violated. Ex. 6 at LCA-D00179-80, 199, 203. The Chapter adopted and agreed to abide by LCA Rules pursuant to its *By-Laws*. Ex. 4 at LCA-D00453, 456 (Art. III and Art. XI, § 1).

5

C.  The Underlying Action

The Complaint in the Underlying Action ("Underlying Complaint")[3] alleges Mynhardt was injured on February 3, 2007 during an "open" "informal fraternity party" at an off-campus location where kegs were present and alcohol served. *Underlying Complaint* (Ex. 2) at ¶¶ 22-23, 25.  It is undisputed the off-campus location, 211 N. Lee Avenue, was Cassady's private residence and not the Chapter house. *Id.* at ¶ 18; *Residential Lease* (Ex. 10); *Deposition of John Cassady Vol. I* (Ex. 11) at 123:15-18, 140:8-141:6; *Affidavit of Chapter President Michael Carnicelli* (Ex. 13) at ¶¶ 15-16; *Affidavit of Chapter Treasurer, John McMackin,* Ex. 14 at ¶¶ 12-13.  Mynhardt alleges that he sustained his injuries while being forcibly removed from the Party by Cassady and Clint Blackburn.  Ex. 2 ¶¶ 26-33.  It is undisputed that Blackburn was not a fraternity member.  Ex. 11 at 148:20-21.

Mynhardt subsequently filed suit against Elon University, LCA, the Chapter, and several individuals who attended the Party, including Cassady.  Ex. 2.  Mynhardt alleges the Chapter had a duty to protect him because it was aware of the dangers of open, informal, underage drinking parties in violation of fraternity rules, voluntarily undertook a duty to regulate them and failed to enforce its rules.  *Id.* at ¶ 72.  Mynhardt also alleges the Chapter had a special relationship with him because he was an undergraduate student who the Chapter's rules were designed to protect.  *Id.*  Finally, he alleges the Chapter is

---

[3] The Underlying Complaint was amended for a fourth time on March 18, 2010. Reference to the "Underlying Complaint" is to that Fourth Amended Complaint (Ex. 2).

vicariously liable for the actions of Cassady because he alleges that Cassady and Blackburn were removing him from an informal fraternity party. *Id.* at ¶ 78.

The Chapter has consistently denied liability, claiming the Party was not a Chapter event. *Local Chapter's Responses to Plaintiff's First Set of Interrogatories* (Ex. 23) at 2, 4-6. The Chapter and its officers, including the President, Vice-President, and Social Chair, have all confirmed that the party was not an official or unofficial event. Ex. 12 at 16:23-17:14, 20:24-21:21; Ex. 13 at ¶ 17; Ex. 23; Ex. 14 at ¶¶ 11-26; Ex. 22 at 50:9-52:4, 98:9-12; Ex. 23 at 2, 4-6. Investigations by Elon and LCA also concluded this was not a Chapter event. *Deposition of Jason Anhorn* (Ex. 24) at 145:22-146:16; *Deposition of John Holloway* (Ex. 25) at 76:22-77:9. Cassady acknowledges that at the Party he was not acting as the Chapter Vice President and was just spending time with his friends. Ex. 12 at 16:23-17:14, 20:24-21:21.

Whether the Party was a fraternity event or not, the key facts about the Party remain undisputed. Underage drinking was freely permitted, including by Cassady, who was underage and admitted to consuming eight beers that evening. Ex. 11 at 92:9-17, 107:16-20. The Party was not registered with LCA or Elon University, LCA's event planning process was not followed, and the Party had no particular purpose. Ex. 11 at 46:6-8, 114:20-23, 123:25-124:7, 128:13-129:9; Ex. 12 at 11:10-18; Ex. 13 at ¶¶ 23-24; Ex. 14 at ¶¶20-26; *Deposition of Social Chair Robert Olson* (Ex. 22) at 51:2-52:17, 94:25-95:10; 104:21-105:3 106:20-107:6, 131:1-4; Ex. 23 at 2, 4-6. There was

unrestricted and/or public access to the Party and no guest list. Ex. 11 at 61:25-62:10; Ex. 12 at 11:22-12:19; Ex. 14 at ¶ 21; Ex. 15 at 111:13- 24; Ex. 16 at 200:22-201:19; Ex. 22 at 107:2-3. There was public access to alcohol and no effort to verify attendees' age. Ex. 11 at 81:23-82:21, 96:19-97:8; Ex. 14 at ¶¶ 24-26; Ex.16 at 200:22-201:19. Beer was served from a keg and drinking games were played. Ex. 11 at 65:23-66:2, 102:1-3; Ex. 12 at 12:20-21; Ex. 22 at 40:25-41:5, 43:4-9. There was no professional security or party monitors to deal with uninvited guests and monitor potential problems. Ex. 12 at 12:5-19; Ex. 14 at ¶¶ 9, 22-23. The Party continued past 2:00 am. Ex. 11 at 137:2-20; Ex. 15 at 105:17-106:4. Mynhardt's injuries occurred after 2:00 am. *Id*. Sixteen (16) of a the twenty-three (23) active Chapter members attended the Party, including its Vice President, Treasurer, and Social Chair, as well as the outgoing president, vice president, secretary, risk manager, fraternity educator, recruitment chair, ritualist and educational chairman. *List of Party Attendees* (Ex. 21); Ex. 23 at 3-4. At least fifty-four (54) people in all attended the Party. Ex. 21.

After substantial discovery, LCA, Elon, and Robert Olson prevailed on summary judgment. Defendants Blackburn, Caldwell, Wells, and Long settled. Plaintiff appealed LCA and Elon's summary judgment ruling and the appellate court heard argument on January 10, 2012. Mynhardt's remaining claims against Cassady and the Chapter are stayed pending a resolution of the appeal.

### D. The Coverage Action

Underwriters investigated the claim and although the Policy contains no defense cost coverage for Chapters or undergraduate members, they undertook the Chapter's defense after they learned the Chapter had no other insurance.[4] This defense was pursuant to a reservation of rights. *Reservation of Rights* (Ex. 27). Liberty then filed this declaratory judgment action ("Coverage Action") to clarify that it has no duty under the Policy to defend or indemnify them against the allegations in the Underlying Action. *Complaint* (ECF No. 1). Former Defendants Caldwell, Long, McElroy, and Olson all stipulated to no coverage and have been dismissed from this action with prejudice. ECF No. 10, 27, 33, 34.

## III. Argument

### A. Summary judgment standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). "When a party has submitted sufficient evidence to support its request for summary judgment, the burden shifts to the nonmoving party to show that there are genuine issues of material fact." *Emmett v. Johnson*, 532 F.3d 29, 297 (4th Cir. 2008). The existence of *some* alleged factual dispute between the parties will not defeat a motion for summary judgment; the disputed facts must create a *genuine* issue

---

[4] By assuming the Chapter's defense, Liberty does not concede the Policy provides defense cost coverage for Chapters or undergraduate members.

of *material* fact. *Id*. Further, "[m]ere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law." *Id*.

### B. Policy Interpretation and Burdens of Proof

Insurance policy interpretation is a question of law. *Selective Ins. Co. of South Carolina v. Terry*, 2004 WL 1618589, * 7 (M.D.N.C. 2004). Where the contract language is clear and unambiguous, the court must enforce the policy as written, without rewriting the contract or disregarding the express language used. *Id.* at *10. Ambiguity only exists if the language at issue is fairly and reasonably susceptible to either of the constructions for which the parties contend. *Pennsylvania Nat. Mut. Cas. Ins. Co. v. Triangle Paving, Inc.,* 973 F.Supp. 560, 563 (E.D.N.C. 1996); *Selective Ins. Co. of South Carolina,* 2004 WL 1618589 at *8.

Where, as here, a manuscript insurance policy was negotiated between sophisticated parties, even if ambiguity is found, the Court should enforce the intent of the parties and not construe any ambiguity against the insurer. *See Northbrook Excess and Surplus Ins. Co. v. Procter & Gamble Co.,* 924 F.2d 633, 637–39 (7th Cir.1991); *Falmouth Nat'l Bank v. Ticor Title Ins. Co.*, 920 F.2d 1058, 1062 (1st Cir. 1990); *First State Underwriters Agency of New England Reinsurance Corp. v. Travelers Ins. Co.*, 803 F.2d 1308, 1314 n.5 (3rd Cir. 1986); *Eastern Associated Coal Corp. v. Aetna Cas. & Sur. Co.*, 632 F.2d 1068, 1075 (3rd Cir. 1980); *Eagle Leasing Corp. v. Hartford Ins. Co.,* 540

10

F.2d 1257, 1261 (5th Cir. 1976); *Koch Engineering Co., Inc. v. Gibraltar Cas. Co., Inc.*, 878 F.Supp. 1286, 1288 (E.D.Mo. 1995).

A purported insured bears the initial burden of presenting a claim covered under an insurance policy, including establishing it is an "insured." *Selective Ins. Co. of South Carolina v. Terry*, 2004 WL 1618589 at * 7; *Kruger v. State Farm Mut. Auto Ins. Co.*, 403 S.E. 2d 571, 572 (N.C. App. 1991); *accord*, *Liberty Corporate Capital, Ltd. v. Phi Omega Local Chapter of Phi Sigma Kappa at Minnesota State University, Moorhead, et al.*, 2008 WL 3911259 (D. Minn. 2008); *Liberty Corporate Capital, Ltd. v. El Bannan, et al.*, 2009 WL 860358 (W.D. Ky. 2009). Thus, while Liberty will demonstrate that the undisputed facts prove that the Chapter is not an insured under the Policy, it is in fact the Chapter's burden to show it is an insured. *See id.* Finally, where no possibility of coverage exists there is no duty to defend or indemnify.

### C. The Chapter is not an "Insured" under the Policy

The Chapter is not a "Named Insured." Ex. 3 at JRF-FSL-054. Instead, Chapters are defined separately in the Policy. *Id.* at JRF-FSL-063 (defining "Chapter"). Under the Policy's "Who Is Insured" provision, the Chapter is only insured:

1. While acting in accordance with both LCA's policies and procedures as well as those of the Local Chapter; <u>and</u>
2. While acting within the scope of his duties; <u>and</u>
3. Only with respect to liability for activities performed by him on behalf LCA or the Local Chapter.

11

*Id.* at JRF-FSL-064. If the Chapter cannot demonstrate that it meets every prong of the 3-part test, then coverage is not available. *Phi Omega Local Chapter of Phi Sigma Kappa,* 2008 WL 3911259 at *5 ("Who is Insured" clearly and unambiguously requires satisfaction of all three prongs of test); *El Bannan,* 2009 WL 860358 at * 3 (same).

The Chapter cannot satisfy the first prong of the "Who is Insured" test because it cannot demonstrate that its members acted in accordance with LCA policies and procedures. The allegations of the Underlying Action alone establish this was an off-campus, informal, open party with kegs where uninvited guests were allowed to enter. *Underlying Complaint* ¶¶ 22-23. LCA policies and procedures specifically prohibit such parties. *See supra* § II(B) & (C).

As a fraternal organization, it is an unincorporated association that can only act through its members. *Phi Omega Local Chapter of Phi Sigma Kappa*, 2008 WL 3911259 at *7; *El Bannan,* 2009 WL 860358 at *3. To that end, 16 of the 23 total active members attended including the Chapter's current Vice President, Treasurer, and Social Chair, as well as the outgoing president, vice president, secretary, risk manager, fraternity educator, recruitment chair, ritualist, and educational chairman. Ex. 21; Ex. 23 at 3-4. This is roughly 70% of the Chapter's active members. Ex. 23 at 3-4. Moreover, the Chapter Vice President hosted the Party and the keg was provided by the Chapter's Social Chair. Ex. 11 at 120:11-121:11; Ex. 22 at 43:1-16, 76:1-23; Ex. 23 at 3.

Discovery has not identified any facts demonstrating the Party complied with LCA

policies and procedures.  In fact, it has only shown that the Party did not.  Indeed, the party's host and Chapter Vice President, Cassady, admits the Party was off-campus and did not occur at the Chapter house.  Ex. 11 at 140:8-141:6; Ex. 12 at 29:6-10, 50:14-52:1.  Cassady admits kegs were present and underage drinking permitted, including by himself, who was under the legal drinking age at the time.  Ex. 11 at 65:23-25, 92:9-17, 107:16-20; Ex. 12 at 11:22-12:24.  Cassady admits there was unrestricted access to alcohol, drinking games were permitted, and the Party continued past 2 a.m. *Id.; see also* Ex. 11 at 66:1-2, 102:1-3.  Cassady admits there was no guest list and Mynhardt was permitted to freely enter the Party after 2 a.m.  Ex. 11 at 61:25-62:10, 137:2-20; Ex. 12 at 12:5-12:24.  Cassady admits more than 50 people attended the Party, but that no Fraternity event planning procedures were followed and there was no professional security or party monitors to deal with uninvited guests or monitor potential problems.  Ex. 11 at 46:6-8, 61:25-62:10, 114:20-23, 120:11-121:11, 123:25-124:7, 128:13-129:9; Ex. 12 at 11:10-13:17; Ex. 13 at ¶¶ 17-24; Ex. 21.  Cassady also testified that he was performing none of his duties as Vice President at the Party.  Ex. 12 at 20:24-21:21.

On the basis of the foregoing, assuming the Party was a Chapter event as Mynhardt claims, then it violated LCA policies and procedures and the Chapter is not an insured.  Assuming it was not a Chapter event, as the Chapter and its officers claim, then the Chapter is not facing liability for any act the membership performed on behalf of

13

LCA and, as such, is not an insured. *See Phi Omega Local Chapter of Phi Sigma Kappa*, 2008 WL 3911259 at *6-7; *El Bannan,* 2009 WL 860358 at *3.

### D. The Fraternity Alcohol Policy Exclusion Bars Coverage

Both the allegations of the Underlying Complaint and the undisputed facts establish that even if the Chapter was an "Insured," which it is not, coverage is precluded because all of Mynhardt's allegations arise out of or result from his attendance at the Party that violated the Fraternity Alcohol Policy.

In relevant part, the Policy provides that Chapters have no coverage "for any claim arising out of or in any way resulting from any 'Violation' of 'Fraternity Alcohol Policy'." Ex. 3 at JRF-FSL-080. "'Fraternity Alcohol Policy' means: The written rules, regulations, or procedures regarding alcohol which are established by the First Named Insured and the 'Local Chapter' or 'Colony' at the time of loss." *Id.* "Violation" means: a "[d]etermination by the executive board of the First Named Insured, or legal authority that some breaking, infraction, or breach of 'Fraternity Alcohol Policy' occurred." *Id.*

Three federal district courts have found that this exclusion is clear and unambiguous. *See, Liberty Corporate Capital, Ltd. v. Nu Zeta Local Chapter of Lambda Chi Alpha Fraternity*, 2007 WL 496736 *3-4 (M.D.Ga. February 13, 2007); *Phi Omega Local Chapter*, 2008 WL 3911259 at *7 (same); *El Bannan,* 2009 WL 860358 at * 3 (same). Those same three courts have held that the Court is a "legal authority" empowered to determine that a "Violation" of "Fraternity Alcohol Policy" has occurred.

14

*Id.* All three have held that the exclusion clearly extends to all claims that flow from parties in violation of those rules. *Id.*

This Court should similarly apply the exclusion to preclude coverage here. LCA's written rules regarding alcohol prohibited open, underage drinking parties, required security, prohibited parties past 2 a.m., and required compliance with Elon's rules. *See supra §* II(C). The Party did not meet these requirements. *See supra* at p. 12-13.

The exclusion extends to all claims "arising out of or in any way resulting from any 'Violation' of 'Fraternity Alcohol Policy.'" This clearly excludes all manner of injury or loss that is a consequence or outcome of a "Violation" of any "Fraternity Alcohol Policy."[5] Under North Carolina law, the words "arising out of or in connection with," when used in an insurance policy exclusion, are construed broadly to eliminate coverage for all possible proximate causes of a loss. *See Nationwide Mutual Fire Insurance Co. v. Grady*, 502 S.E.2d 648 (N.C. App. 1998); *Nationwide Mutual Fire Insurance Co. v. Nunn,* 442 S.E.2d 340 (N.C. App. 1994). Thus, it has been held, that when one's very presence on another's premises was linked, associated with or connected to a business purpose, the business purpose exclusion of a homeowners policy would preclude coverage for all possible proximate causes of a loss. *Nunn,* 442 S.E.2d at 343-44; *Grady,* 502 S.E.2d at 652. *See also, Laney v. Penn-America Ins. Co.,* 2005 WL

---

[5] By its plain and ordinary meaning, the word "any" means all and the word "way" means manner, mode or fashion. "Resulting" means the consequence or outcome of an action. *Random House Dictionary* (2012). When combined, these words extend to all manner of injury or loss that is a consequence or outcome all violations of the Fraternity Alcohol Policy.

1950256 (N.C. App. Aug. 16, 2005) (exclusion of all claims "resulting from" excluded act extended to all negligence claims against nightclub from an assault on its premises). The terms arising out of or in any way resulting from are equally broad and as Mynhardt's very presence at the Party was in association with an excluded event, the exclusion applies to all his claims, however characterized.

### E. The Assault and/or Battery Exclusion Also Precludes Coverage

The Policy also does not apply to "any claim arising out of or in any way resulting from any assault and/or battery." Ex. 3 at JRF-FSL-079. Thus, as noted above, coverage is excluded for all possible proximate causes arising out of an "Assault and/or Battery." *See supra §* III(D); *see also Laney,* 2005 WL 1950256 (excluding all claims "resulting from" assault and battery, including nightclub's alleged negligent failure to have security, negligent failure to have procedures to resolve violent situations, and negligent failure to train).

"Assault and/or Battery" means "The terms as defined by the state statutes of the state in which any such claim is present." *Id.* Under North Carolina law, an assault is "a show of violence causing a reasonable apprehension of immediate bodily harm …" or "an intentional offer or attempt by force or violence to do injury to the person of another." *State v. Thompson*, 219 S.E.2d 566, 568 (N.C.App. 1975).

Mynhardt was injured while Cassady and Blackburn forcibly removed him from the Party. Ex. 2 at ¶¶ 26-33; Ex. 11 at p. 80:3-89:14, 163:24-164:6, 165:5-23; Ex. 15 at

16

143:20-150:16, 154:20-156:11; Ex. 18 at 15:8-21:22, 30:18-33:25. Cassady and Blackburn were charged with felony Assault Inflicting Serious Bodily Injury pursuant to N.C. Gen. Stat. § 14-32.4. *Felony Investigative Report of Defendant John Ferrell Cassady* (Ex. 19); *Felony Investigative Report of Defendant Clinton Joseph Blackburn* (Ex. 20). Mynhardt alleges and testified that his injuries were from an assault. Ex. 2 at ¶¶ 17-33, 60, 67; Ex. 15 at 134:23-139:25, 142:20-156:23. All of Mynhardt's claims against the Chapter arise out of or result from the alleged assault and/or battery at a party that violated fraternity rules. Such claims are excluded under the Assault and/or Battery Exclusion. *Laney,* 2005 WL 1950256.

WHEREFORE, for all the reasons set forth above, Liberty respectfully requests that this Court grant its Motion for Summary Judgment, declare it owes no coverage to the Chapter or to defend or indemnify it with respect to Mynhardt's claims, and authorize Liberty to withdraw from providing the Chapter with an ongoing defense.

Dated this 20th day of February 2012.

        LIBERTY CORPORATE CAPITAL, LTD.

        By: /s/Nolan Burkhouse
           Nolan C. Burkhouse, Esq.
           Paul Frank + Collins P.C.
           PO Box 1307
           Burlington, VT 05402-1307
           (802) 658-2311

           -and-

        By: /s/ Stan B. Green
           Stan B. Green, Esq.
           N.C. State Bar No. 25539
           Andrew L. Fitzgerald
           N.C. State Bar No. 31522
           Strauch, Fitzgerald & Green, P.C.
           118 South Cherry Street
           Winston-Salem, NC 27101
           Telephone: (336) 725-8688
           Facsimile: (336) 725-8867
           afitzgerald@sfandglaw.com
           sgreen@sfandglaw.com

           *Attorneys for Plaintiff Liberty Corporate Capital, Ltd.*

1116513_v1: 8063-00050