## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CIVIL ACTION NO. 1:09-cv-765

| | |
|---|---|
| **LIBERTY CORPORATE CAPITAL, LTD.,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**DELTA PI CHAPTER OF LAMBDA CHI ALPHA, JOHN FERRELL CASSADY, AND JOHN LEE MYNHARDT,**<br><br>     **Defendants.** | **DEFENDANT DELTA PI CHAPTER OF LAMBDA CHI ALPHA'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Defendant Delta Pi Chapter of Lambda Chi Alpha (the "Chapter"), by and through counsel, pursuant to Local Rule 56.1 and Rule 56(c) of the Federal Rules of Civil Procedure (the "Federal Rules"), submits its Memorandum in Opposition to the Motion for Summary Judgment filed against the Chapter by Plaintiff Liberty Corporate Capital, Ltd. ("Liberty").

### NATURE OF THE MATTER BEFORE THE COURT

This insurance coverage declaratory judgment action arises out of an accident that occurred at a fraternity party on February 3, 2007. Liberty's Motion for Summary Judgment seeks a declaration that the Chapter is not entitled to coverage under an insurance policy ("Policy") issued to the national Lambda Chi Fraternity, Inc. ("Lambda Chi") for claims against the Chapter in a personal injury lawsuit filed by Defendant John Lee Mynhardt ("Mynhardt") for injuries sustained in the accident. Liberty's Motion

1

should be denied because the Chapter was an insured under the Policy and the exclusions asserted by Liberty do not apply.

In the alternative, material factual issues that are currently unresolved and stayed pending appeal in the underlying state court lawsuit are outcome determinative of the questions presently before this Court, and the Court should, therefore, stay ruling on Liberty's Motion pending final judgment in the underlying state court action.

## STATEMENT OF PROCEDURAL POSTURE

On or about June 5, 2008, Mynhardt filed a personal injury action in the Superior Court of Guilford County, North Carolina, No. 08-CVS-7917 (the "Underlying Action"), alleging claims for negligence, willful and wanton conduct, and punitive damages against the Chapter, Lambda Chi, Elon University ("Elon"), and several individual fraternity members.[1]   Pursuant to the Policy, Liberty undertook defense of the Chapter in the Underlying Action under a reservation of rights.  Following extensive discovery, the Chapter filed a motion for summary judgment, in part, based on similar grounds to those asserted in Liberty's motion for summary judgment.[2]  The Superior Court granted the Chapter's motion in part, but denied it as to Mynhardt's punitive damages claim, determining that material issues of fact remained unresolved.  Mynhardt appealed the partial grant of summary judgment for the Chapter, as well as the Court's ruling as to

---

[1] *See* Complaint filed by John Lee Mynhardt, a true and accurate copy of which is attached and incorporated herein as **Exhibit A**.

[2] *See* Motion of Delta Pi Chapter of Lambda Chi Alpha for Summary Judgment as to All Claims ("Chapter's Motion"), a true and accurate copy of which is attached and incorporated herein as **Exhibit B**.  *See also* Delta Pi Chapter of Lambda Chi Alpha's Brief in Support of Motion for Summary Judgment ("Chapter's Brief"), a true and accurate copy of which is attached and incorporated herein as **Exhibit C**.

other defendants. Mynhardt thereafter withdrew his appeal as to the Chapter, but the Underlying Action is and has been stayed pending resolution of Mynhardt's appeal as to other defendants.

On October 2, 2009, Liberty filed this declaratory judgment action against the Chapter; John Ferrell Cassady ("Cassady"); Charles Kenneth Caldwell; Linwood Brady Long; Brian Thomas McElroy; Robert Lawrence Olson, also known as Robert S. Olson, Jr.; and Mynhardt, seeking a declaration that the parties are not entitled to insurance coverage under the Policy.[3] The Chapter, Cassady, and Mynhardt are the only defendants remaining. On February 20, 2012, Liberty filed motions for summary judgment against the Chapter, Cassady and Mynhardt seeking to determine the coverage issues as a matter of law.

## STATEMENT OF FACTS

### I. *The Insurance Policy*

In 2007, Certain Underwriters at Lloyd's, London, including Liberty, issued the general liability insurance Policy at issue to Lambda Chi for the period of February 1, 2007 to February 1, 2008 for the policy premium of $238,502.00. Doc. 56-3, 1. Liberty is a twenty-five percent (25%) subscribing underwriter of the Policy. *Id.* Lambda Chi is the "First Named Insured" under the Policy. *Id.* at 9. The Insuring Agreement of the Policy obligates Liberty to "pay those sums that the insured becomes legally obligated to

---

[3] All parties stipulated that the pleadings, documents, and discovery materials produced in the Underlying Action would be a part of the record in this coverage action. Relevant documents from the Underlying Action are attached as exhibits hereto.

pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *Id.* at 20.

The Policy goes on to specifically define "insured" to include "Chapters" of the Named Insured. *Id.* at 36. It is undisputed that the Chapter is a "Chapter" of Lambda Chi, and Mynhardt alleges claims for "bodily injury" as those terms are used in the Policy. Rather, Liberty's defenses to coverage in this case revolve around several conditions and exclusions, which Liberty maintains serve to eliminate coverage for the Chapter and its co-defendant, John Ferrell Cassady.

Specifically, the Policy includes the following conditional language purporting to limit when a Chapter is entitled to coverage as an "insured" under the Policy:

> Each of the following entities or persons are insureds, **but only while acting in accordance with the "Named Insureds" policies and procedures and their own policies and procedures, and only while acting within the scope of their duties, and only with respect to their liability for activities performed by them on behalf of the "Named Insureds", or of insured "Chapters", "Colonies", "Housing Organizations", or "Alumni Organizations.**"

*Id.* at 36 (emphasis added). In addition, the Policy includes the following exclusions from coverage: "No insurance coverage afforded by this policy shall apply to any insured for any claim arising out of or in any way resulting from any 'Assault and / or Battery;'" and "No insurance coverage afforded by this policy shall apply to any 'Chapter', 'Colony', or 'Undergraduate Insureds' for any claim arising out of or in any way resulting from any 'Violation' of 'Fraternity Alcohol Policy.'" *Id.* at 64-65.

4

## II. ***The Underlying Personal Injury Action***

In the Underlying Action, Mynhardt alleges that he attended a party (the "Party") during the early morning hours of February 3, 2007 at 211 North Lee Avenue ("House"). Doc. 56-2[4] ("Mynhardt Complaint"), at ¶¶ 17-18, 32-33. Cassady, who was the Chapter's Vice President, lived at the House along with two other Chapter members. The House was used for Lambda Chi social events and parties, and Lambda Chi "signs, insignia and emblems," were displayed in and about the House. Doc. 56-2, at ¶ 16; *Cassady Dep.*[5] at 38:15-40:15. The House was passed down each year from and to Chapter fraternity members, *Cassady Dep.* at 111:16-19, and was located in close proximity to Elon. Doc. 56-2, at ¶ 19.

Mynhardt alleges that the Party was a Chapter fraternity party, and was held by and through Chapter members. Doc. 56-2, at ¶¶ 22, 25; *Cassady Dep.* at 69:4-9. The Party was held during Elon's fraternity rush season, at least in part for Chapter recruiting purposes. *Cassady Dep.* at 78:5-12. The Party was "a precursor" to the Chapter's "wing bowl," which was to be held on February 3, 2007 and was the Chapter's "premier rush event." *Id.* at 76:19-21; 144:21-145:3. The majority of Party attendees were Chapter fraternity members or pledges. *See Chart*;[6] *Cassady Dep.* at 74:12-15.

---

[4] "Doc." or "Docs." refer to the exhibits Liberty submitted with its Motion for Summary Judgment under the docket number they were assigned when filed with this Court.
[5] "Cassady Dep." refers to the deposition of John Ferrell Cassady taken on March 11, 2009 in the Underlying Action, relevant portions of which are attached and incorporated herein as **Exhibit D**.
[6] "Chart" refers to the document produced by Cassady showing Lambda Chi members present at the Party, a true and accurate copy of which is attached as **Exhibit E**.

5

Mynhardt alleges that Cassady and Blackburn, who was not a Chapter member or resident of the House, attempted to eject him from the Party to comply with university and fraternity policies and procedures. Doc. 56-2, at ¶ 27. Specifically, Mynhardt alleges he was "negligently moved through the [H]ouse," fell, and "became injured and could not sit up." *Id.* at ¶¶ 30, 32-33.

In November of 2010, after several of the individual defendants were either dismissed from or settled out of the Underlying Action, Elon, Lambda Chi, and the Chapter filed motions for summary judgment. *See Chapter's Motion; Elon and Lambda Chi Motions.*[7] The Chapter argued in its motion that it was not responsible for Mynhardt's injury because the Party was not a fraternity party, and further that the Party was not held on behalf of the Chapter and Mynhardt's injury occurred "outside the scope of any legal duty" owed by the Chapter. *Id.* On January 28, 2011, Judge Howard Manning granted the Chapter's motion as to willful and wanton conduct and punitive damages, but denied summary judgment on the negligence claim finding instead that material issues of fact remained to be resolved. In so doing, Judge Manning implicitly rejected the Chapter's argument that the Party was not held on behalf of the Chapter.[8] Judge Manning granted summary judgment for Elon and Lambda Chi on all claims. *See id.*

---

[7] True and accurate copies of Elon's and Lambda Chi's Motions for Summary Judgment are attached and incorporated herein as **Exhibit F**.

[8] True and accurate copies of the Underlying Action Summary Judgment Orders are attached and incorporated herein as **Exhibit G**. The summary judgment orders were originally entered on December 30, 2010, and were amended to state that they were final judgments, and that there was "no just reason for delay pursuant to Rule 54(b), North Carolina Rules of Civil Procedure." *Id.*

Case 1:09-cv-00765-CCE-LPA   Document 65   Filed 04/26/12   Page 6 of 21

On February 2, 2011, Mynhardt appealed the grant of summary judgment as to Elon and Lambda Chi, and as to the Chapter on the willful and wanton conduct and punitive damages claims.[9]  On March 8, 2011, Mynhardt withdrew his appeal as to the Chapter,[10] but the Underlying Action is and has been stayed pending resolution of Mynhardt's appeal as to other defendants.  On January 10, 2012, the Court of Appeals heard oral arguments, but it has not yet rendered a decision.  As a result, the state court has not entered a final judgment or otherwise resolved the factual issues concerning Mynhardt's negligence claim against the Chapter.

## STATEMENT OF ISSUES PRESENTED

I. **WHETHER LIBERTY HAS MET ITS BURDEN OF SHOWING THAT NO GENUINE DISPUTE EXISTS REGARDING WHETHER THE POLICY AFFORDS COVERAGE TO THE CHAPTER FOR THE CLAIMS ALLEGED IN THE MYNHARDT COMPLAINT?**

II. **WHETHER, IN THE ALTERNATIVE TO DENYING LIBERTY'S MOTION, RESOLUTION OF THIS COVERAGE ACTION SHOULD BE STAYED PENDING DETERMINATION OF FACTUAL ISSUES IN THE UNDERLYING STATE ACTION?**

## ARGUMENT[11]

## I.  LEGAL STANDARD FOR GRANTING SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate only when there is no genuine dispute as to a material fact.  Fed. R. Civ. P.

---

[9] A true and accurate copy of the Underlying Action Notice of Appeal is attached and incorporated herein as **Exhibit H**.

[10] A true and accurate copy of the Underlying Action Withdrawal of Notice of Appeal is attached and incorporated herein as **Exhibit I.**

[11] In addition to the arguments set forth herein, the Chapter adopts and incorporates all arguments set forth by Defendants Cassady and Mynhardt.

56(c); *Henson v. Liggett Group, Inc.*, 61 F.3d 270, 274 (4th Cir. 1995).  When deciding whether summary judgment should be granted, the basic question is whether the evidence "is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  When ruling on a motion for summary judgment, a Court views the evidence and draws all inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  The party moving for summary judgment has the burden of persuasion for all relevant issues.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II.  LIBERTY'S MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE THE POLICY OBLIGATES IT TO DEFEND AND INDEMNIFY THE CHAPTER IN THE UNDERLYING ACTION.

Liberty's Motion must be denied because the Chapter is an "insured" under the Policy, and none of the exclusions Liberty relies on apply.  An insurer's duty to defend is broader than its duty to indemnify.  Whether an insurer is obligated to provide a defense to its insured is "measured by the facts as alleged in the pleadings."  *Prime TV v. Travelers Ins. Co.*, 223 F.Supp.2d 744, 749 (M.D.N.C. 2002) (citation omitted) (explaining that if "no final adjudication has yet been made on the merits of the underlying litigation, this Court's role is to compare the allegations in the pleadings side-by-side with the policies to determine whether the events as alleged may be covered or excluded").  If an examination of the pleadings discloses "'a mere possibility' that one or more of the claims against the insured may be subject to insurance coverage," an insurer is "obligated to provide a defense."  *Wayne Brothers, Inc. v. North River Ins. Co.*, 1:01-

8

CV-00842, 2003 WL 22213615, at * 3 (M.D.N.C., Aug. 20, 2003) (copy attached as **Exhibit J**).

## A. THE CHAPTER IS AN "INSURED" UNDER THE POLICY

Liberty does not dispute that Mynhardt's complaint in the Underlying Action alleges claims for "bodily injury" caused by an "occurrence" triggering coverage under the Policy's insuring agreement. As noted above, Liberty also does not dispute that the Chapter is a "Chapter" within the meaning of the Policy. Rather, Liberty contends the Chapter does not meet the Policy's definition of "insured" due to application of three exclusionary conditions purporting to eliminate otherwise qualifying "insureds" from coverage.

The exclusionary conditions relied on by Liberty purport to eliminate coverage for otherwise qualified insureds and, as such, must be treated the same as other exclusions within the Policy. *See Carolina Materials, LLC v. Cont'l Cas. Co./CNA Ins. Cos.*, 3:08-CV-158-RJC, 2009 WL 1346121, at *3 (W.D.N.C., May 12, 2009) (defining "exclusion" as a provision that "limits the extent of coverage set forth in an insurance policy," and that "eliminates coverage" that, if not for the exclusion, "would have existed") (copy attached as **Exhibit K**). The conditions at issue purport to exclude coverage if: (1) the insured is not acting in accordance with its and the Named Insured's own policies and procedures (the "Policy and Procedure Exclusion"); (2) the insured is not acting within the scope of its duties (the "Scope of Duties Exclusion"); and (3) the insured is not acting on behalf of the Named Insured or other insured entities (the "On Behalf Of Exclusion").

9

As the insurer, it is <u>Liberty's</u> <u>burden</u> to prove that these exclusions apply to bar coverage for the Chapter.  *See Erie Ins. Exchange v. First United Methodist Church*, 690 F. Supp. 2d 410, 413 (W.D.N.C. 2010) (citation omitted).  Further, "exclusions from, conditions upon and limitations of undertakings by the company, otherwise contained in the policy, are to be construed strictly so as to provide the coverage, which would otherwise be afforded by the policy."  *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 355, 172 S.E.2d 518, 522-23 (1970).  For an exclusion to bar coverage, the claims against the insured must be the proximate and sole result of the excluded conduct.  *Builders Mut. Ins. Co. v. North Main Const., Ltd*., 176 N.C. App. 83, 88, 625 S.E.2d 622, 625 (2006) (citing *State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 547, 350 S.E.2d 66, 74 (1986)).  Under North Carolina law[12] any ambiguity as to the meaning of a Policy term must be resolved in favor of the insured, "in a manner which gives, but never takes away, coverage."[13]  *Harford Mut. Ins. Co. v.*

---

[12] The Chapter contends North Carolina law governs the Policy within this case by virtue of North Carolina's "local interest statute" and the important interests of North Carolina residents involved.  *See e.g.*, *Collins & Aikman Corp. v. Hartford Acc. & Indem. Co.*, 106 N.C. App. 357, 416 S.E.2d 591 (1992), *aff'd* 335 N.C. 91, 436 S.E.2d 243 (1993); *Continental Casualty Co. v. Physicians Weight Loss Centers of America, Inc.*, 61 Fed. Appx. 841 (2003).  As explained in Cassady's brief, however, application of Indiana law would not materially change the Court's analysis.  *See State Capital Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986); *Asbury v. Indiana Union Mutual Ins. Co.*, 441 N.E.2d 232, 236-7 (Ind. App. 1982); *American Nat. Fire Ins. Co. v. Rose Acre Farms, Inc.*, 107 F.3d 451, 457 (7th Cir. 1997) (all of which interpret insurance policies and exclusions in favor of providing coverage to the insured).

[13] Liberty claims the Policy is a "manuscript policy" negotiated by sophisticated parties, and therefore should not be interpreted using the generally accepted principles of construction for insurance policies.  Again, as set forth in Cassady's brief, the basic terms of the Policy are almost identical to language found in the standard ISO general liability policy form in use within the industry.  In addition, the record is devoid of any evidence that the insured in this case, the Chapter, participated in negotiations with the insurer.  The Chapter consists entirely of local

10

*Agean, Inc.*, 1:09-CV-461, 2011 WL 2295036, at *3 (M.D.N.C. 2011) (copy attached as **Exhibit L**).

Liberty has failed to carry its burden of showing these exclusions apply to preclude coverage for the Chapter. First, the On Behalf Of and Scope of Duties Exclusions do not apply. After hearing the parties' evidence on these issues in discovery in the Underlying Action, the state court refused to grant summary judgment in favor of the Chapter. Fraternity policies state that "[i]f a 'reasonable' person would say that an event is a 'chapter' event, it IS . . . even if the event is held off-campus." Doc. 56-7, at 34 (emphasis in original). The House was the residence of three fraternity members, was passed down from and to fraternity members each year, and was known at Elon as a Lambda Chi house. *Olson Dep.*[14] at 46:7-11; Liberty's Responses,[15] at Bates Number LIBERTY00004–LIBERTY00005; Doc. 56-2, at ¶ 16; *Cassady Dep.* at 111:16, 38-45. A majority of Chapter members attended the Party, and fraternity members were stationed at the Party as designated drivers. Liberty's Responses at Bates Number LIBERTY00002; *Olson Dep.* at 47:15-25; *Chart*; *Cassady Dep.* at 74:12-15. Based on these facts a reasonable person could have considered the Party a fraternity event, such that pursuant to Lambda Chi policies the Party was a Chapter event held on behalf of the

---

fraternity members, most of whom are college students, and can only act through its members. *See* Doc. 56-2, at ¶ 3. To suggest that this collection of local students constitutes a "sophisticated party" belies the facts. As a result, this Court should reject Liberty's argument that the Policy at issue must be construed differently from other insurance policies.

[14] "Olson Dep." refers to the deposition of Robert Lawrence Olson II, taken September 30, 2009 in the Underlying Action, relevant excerpts of which are attached as **Exhibit M**.

[15] "Liberty's Responses" refers to Liberty Corporate Capital, Ltd.'s Responses to John Lee Mynhardt's First Request for Production of Documents, relevant excerpts from which are attached hereto as **Exhibit N**.

Chapter. *See Cassady Dep.* at 112:12-19; Doc. 56-2, at ¶ 25. Moreover, Cassady testified that recruiting new members is a primary purpose of the fraternity, and that the Party was a Chapter party intended, at least in part, to recruit future Chapter members. *Cassady Dep.* at 14:4, 69:4, 76:22-24, 77:4-8, 78:5-12. As a result, Mynhardt's injuries could arguably have arisen within the scope of the Chapter's duties. At best, these facts satisfy the exclusionary conditions relied on by Liberty, at worst they create a material factual issue that prevents summary judgment in Liberty's favor, particularly when viewed in the light most favorable to the Chapter. In either event, Liberty has failed to meet its burden of proving that the On Behalf Of and Scope of Duty Exclusions apply.

Liberty has also failed to carry its burden to prove applicability of the Policies and Procedures Exclusion. There is no evidence demonstrating that the Chapter's alleged failure to abide by its or Lambda Chi's policies was the proximate cause of Mynhardt's claims or injuries at all. Liberty merely points out various policies and procedures it alleges were violated at the Party; however, Liberty fails to point out the numerous policies and procedures that were complied with at the Party. Chapter funds were not used to purchase alcohol. *See e.g.*, Doc. 56-5, at 2; Doc. 56-6, at 19; Doc. 56-8, at 5; Doc. 56-7, at 6; *Olson Dep.* at 41:17-18. The Party was not "co-sponsored with an alcohol distributor, charitable organization, or tavern." *See e.g.,* Doc. 56-5, at 2; Doc. 56-6, at 19; Doc. 56-8, at 5; Doc. 56-7, at 13; *see also Cassady Dep.* at 121:19-20 (describing the Party as a "low-key" event). Designated drivers were available. *See e.g.,* Doc. 56-5, at 2; Doc. 56-6, at 19; Doc. 56-8, at 5; Doc. 56-7, at 7; Liberty's Responses at Bates Number LIBERTY00002; *Olson Dep.* at 47:15-25. Alcohol was not sold at the

Party.  *See e.g.,* Doc. 56-5, at 2; Doc. 56-6, at 19; Doc. 56-8, at 5; Doc. 56-7, at 6; *see also Olson Dep.* at 42:14-19; *Mynhardt Dep.*[16] at 71:10-12.  The Party was "very private" and guests were specifically invited by Chapter members.  *See e.g.,* Doc. 56-5, at 2; Doc. 56-6, at 19 (barring "open parties," at which there is "unrestricted access by non-members of the organization without specific invitation"); Doc. 56-8, at 5; Doc. 56-7, at 6; Liberty's Responses at Bates Numbers LIBERTY00015 (stating guests were invited to the Party by phone), LIBERTY00037 (calling the Party a "very private party," which was "invitation only" and an "implied private party"), LIBERTY00040 (stating that the Party was "by invitation only").  Furthermore, fraternity members attempted to remove Mynhardt, an uninvited guest, from the Party.  *Cassady Dep.* at 84:5-6; 103:25–104:1. Contrary to Liberty's argument, at the time the claim arose fraternity members were acting in accordance with Chapter and Lambda Pi policies and procedures.

In addition, both Elon, the Fraternal Information and Programming Group ("FIPG"), and Lambda Chi have responsibility for disciplining the Chapter and its members for failing to comply with applicable policies.  Doc. 56-8, at 3; Doc. 56-7, at 10; *FIPG Guidelines*, at 18.[17]  No disciplinary action was taken against the Chapter in relation to the Party.  Doc. 56-2, at ¶ 77(u).

Further, if the Policies and Procedures Exclusion is interpreted as urged by Liberty, the Policy creates an illusory contract.  An insurance policy should not be

---

[16] "Mynhardt Dep." refers to the deposition of John Lee Mynhardt taken on June 2, 2009 in the Underlying Action, excerpts from which are attached as **Exhibit O**.

[17] "FIPG Guidelines," refers to guidelines issued by the Fraternal Information and Programming Group, relevant excerpts from which are attached and incorporated herein as **Exhibit P**.

13

interpreted in a way that renders any of the coverage provided by the policy illusory. *Liberty Life Ins. Co. v. Commercial Union Ins. Co.*, 857 F.2d 945, 951 (4th Cir. 1988). If the Court were to buy Liberty's argument, the departure by any fraternity member from any of the numerous policies and procedures described above governing fraternity activities and functions,[18] would bar coverage for the Chapter. Such a result would not comport with North Carolina's policy of extending coverage wherever possible or the reasonable expectation of the insureds.

Because Liberty cannot demonstrate the applicability of the exclusionary conditions in the Who Is Insured endorsement and the Chapter otherwise meets the definition of an "insured," Liberty must afford coverage to the Chapter for the claims against it in the Underlying Action. This Court should deny Liberty's Motion.

### B. LIBERTY HAS NOT MET ITS BURDEN OF PROVING THAT OTHER EXCLUSIONS BAR COVERAGE.

Liberty has similarly failed to show that the other exclusions it cites apply to preclude coverage for the Local Chapter. An insurer has the burden of proving that an exclusion applies to preclude coverage under an insurance policy. *See Erie Ins. Exchange*, 690 F. Supp. 2d at 413 (quoting *Allstate Ins. Co. v. Bates*, 185 F.Supp. 2d 607, 610 (E.D.N.C. 2000)). Exclusions are to be "strictly construed" in favor of providing coverage to insureds under insurance policies. *Carolina Materials*, LLC, 2009 WL 1346121, at *4. Further, general principles applicable to exclusions require that the claims against the insured be proximately and solely the result of excluded conduct.

---

[18] It should be noted that policies and procedures governing fraternity events and conduct are set forth in at least five (5) separate documents totaling well over sixty-five (65) pages.

*Builders Mut. Ins. Co.*, 176 N.C. App. at 88, 625 S.E.2d at 625 (citing *State Capital Ins. Co.*, 318 N.C. at 547, 350 S.E.2d at 74). Liberty relies on two specific exclusions within the Policy to support its arguments on summary judgment: (1) the "'Violation' of 'Fraternity Alcohol Policy'" exclusion ("Alcohol Exclusion"); and (2) the "'Assault and /or Battery'" exclusion ("Assault Exclusion"). Neither of these exclusions applied in this case.

### i. *The Alcohol Exclusion Does Not Apply*

The Alcohol Exclusion does not bar coverage for the Chapter under the Policy. The Alcohol Exclusion precludes coverage "for any claim <u>arising out of</u> or <u>in</u> any <u>way resulting from</u>" a violation of the Lambda Chi and Chapter alcohol rules, regulations, or procedures. Doc. 56-3, at 65. Even assuming Liberty could show that a violation occurred, Liberty fails to provide any evidence showing that the claims in the Underlying Action arose out of or in any way resulted from an alleged violation.

Liberty argues that the Court is a "legal authority" that can determine whether an alcohol policy violation occurred, yet Liberty fails to present evidence from which the Court can properly do so. Liberty presents three cases in which insurance coverage was precluded by alcohol exclusions like the one at issue in this action. In all of these cases, however, the Court made the determination that the alcohol exclusion applied because alcohol consumption in violation of fraternity policies was the sole and proximate cause of the death or injury giving rise to the insurance claim. *Liberty Corp. Capital, Ltd. v. Nu Zeta Chapter of Lambda Chi Alpha Fraternity*, 3:05-CV-115, 2007 WL 496736, at *2 (M.D. Ga. 2007) (finding that the fraternity member death from which the insurance

claim arose was based on the "[decedent's] inebriated state," and stating that the underlying action for which defense coverage was sought alleged that the Chapter was liable for not preventing decedent from drinking underage) (copy attached as **Exhibit Q**); *Liberty Corp. Capital, Ltd. v. Phi Omega Chapter of Phi Sigma Kappa at Minn. State University Moorhead*, 06-CV-4808, 2008 WL 3911259, at *3 (D. Minn. 2008) (finding that claims against fraternity for which defense coverage was sought were "premised on the fact" that the decedent was "permitted to illegally consume alcoholic beverages at the party," and that death occurred because decedent "became extremely intoxicated" and disappeared) (copy attached as **Exhibit R**); *Liberty Corp. Capital, Ltd. v. El Bannan*, 506-CV-215-R, 2009 WL 860358, at *1 (W.D. Ky. 2009) (finding that fraternity member drove a car while "legally intoxicated," causing him to hit another car and cause a death from which the insurance claim arose) (copy attached as **Exhibit S**).

North Carolina courts have consistently required that the language "arising out of" be strictly construed as requiring the excluded conduct to be the sole and proximate cause of the claims asserted in order to allow coverage to be avoided.[19] Liberty has presented absolutely no evidence that the injury on which this claim is based was in any way dependent upon the alleged violations of fraternity alcohol policies. *Cassady Dep*. at 82:7-22, 83:6-25, 84-86, 87:1-7, 88:15-25, 89*; Mynhardt Dep*. at 92:7-16. The claims against the Chapter do not allege that Mynhardt's injury arose out of or was the result of alcohol use. Doc. 56-2, at ¶¶ 27-33. The facts do not mention alcohol as a factor in the

---

[19] Liberty's statements in its brief regarding the construction of the term "arising out of" are wrong, if not a misrepresentation of the courts' holdings in the cases referenced.

accident that caused Mynhardt's injury, and show only that the injury from which the claim arose occurred when Mynhardt was negligently removed from the Party and fell. *Id.* The drinking that occurred at the Party prior to the accident was coincidental, and had absolutely no causal nexus to the events surrounding Mynhardt's injury. Liberty has failed to show that a violation of the Alcohol Exclusion was the sole and proximate cause of the claims in the Underlying Action, so Liberty's Motion should be denied.

### ii. *Assault Exclusion*

The Assault Exclusion also does not preclude coverage for the Chapter under the Policy. The Assault Exclusion requires the claim to be "arising out of or resulting from" an assault as defined by North Carolina law. Doc. 56-3, at 64. According to the Policy, "assault" is to be defined pursuant to state statutes of the state in which the claim is presented. *Id.* In North Carolina, assault requires intent to harm. *Hawkins v. Hawkins*, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991), *aff'd*, 331 N.C. 743, 417 S.E.2d 447 (1992). The record is devoid of any facts demonstrating that Mynhardt was intentionally injured, and in any event, intent is necessarily a factual inquiry that cannot be determined at summary judgment. Mynhardt alleged that he was "negligently ejected" from the Party, and only includes claims of negligence, willful and wanton conduct, and punitive damages in his lawsuit. Doc. 56-2, at ¶ 32. In addition, although Liberty acknowledges that Cassady and Blackburn were charged with felony Assault Inflicting Serious Bodily Injury, Liberty neglects to tell the Court that these charges were dropped before any adjudication on the merits. Moreover, Clinton Joseph Blackburn, the person holding Mynhardt at the time of the fall, was not a member of the Chapter. As a result,

17

Liberty has failed to show that a violation of the Assault Exclusion occurred and Liberty's Motion should be denied.

## III. IN THE ALTERNATIVE TO DENYING LIBERTY'S MOTION, THIS COURT SHOULD STAY JUDGMENT IN THIS ACTION PENDING RESOLUTION OF FACTUAL ISSUES IN THE UNDERLYING ACTION.

If the Court does not deny Liberty's Motion, it should stay judgment in this action pending resolution of outcome determinative factual issues in the Underlying Action. Resolving these factual issues in state court will be more efficient and economical, and will prevent unnecessary overlap and the risk of inconsistent judgments in the state and federal actions. Courts have no obligation to "exercise their jurisdiction in federal declaratory judgment cases," or to grant a declaratory judgment remedy to otherwise qualifying litigants. *Great W. Cas. Co. v. Fredrics*, 1:10-CV-267, 2011 WL 5326236, at *2 (W.D.N.C. Nov. 4, 2011) (copy attached as **Exhibit T**); *Wilton v. Seven Falls Co*., 515 U.S. 277, 288 (1995); *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (citations omitted) (stating that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants").

The decision to stay a declaratory judgment action is left to the district court's sound discretion. *Great W. Cas. Co.*, 2011 WL 5326236, at *2 (citing *Wilton*, 515 U.S. at 287-89); *Wilton*, 515 U.S. at 288 (stating that a court is "authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close"). When deciding whether to stay a declaratory judgment action pending resolution of a "related state proceeding, the

18

court 'should specifically consider whether the controversy can better be settled in the proceeding pending in the state court.'" *Republic-Franklin Ins. Co. v. Pasour*, 3:11-CV-181, 2011 WL 5169426, at *3–4 (W.D.N.C. 2011) (citing *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256-57 (4th Cir. 1996)) (copy attached as **Exhibit U**).

The state court is already familiar with the facts of this case, and resolving these issues in state court will be more efficient and will prevent this Court from having to re-evaluate and review these facts. *Republic-Franklin Ins. Co.*, WL 5169426, at *3–4 (citing *Centennial Life Ins. Co.*, 88 F.3d at 256-57) (finding the ability to more efficiently resolve issues in state court than in federal court to be a factor supporting a stay of federal declaratory judgment proceedings).

Similarly, forcing the parties to litigate these issues in this Court and in the Underlying Action would be unnecessarily expensive, as it will force the parties to litigate these issues twice. *Great West Casualty Co.*, 2011 WL 5326236, at *3 (granting a stay pending resolution of the state court action after finding that allowing the federal and state cases to proceed simultaneously would be "uneconomical"); *Great West Cas. Co.*, 2011 WL 5326236, at *2 (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)) (finding it "uneconomical . . . for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties"). Furthermore, resolving identical issues in both state and federal court will result in potential contradictions between state and federal judgments, making a stay appropriate. *Id.* (finding the potential for "unnecessary 'entanglement' between the federal and state court systems," due to

19

"overlapping issues of fact or law" to be a factor in favor of granting a stay); *Great West Casualty Co.*, 2011 WL 5326236, at *3 (granting a stay pending resolution of the state court action after finding that allowing the federal and state cases to proceed simultaneously "would intertwine this Court with the state court proceedings").

## CONCLUSION

Based on the foregoing arguments and authorities, the Chapter respectfully requests that this Court deny Liberty's Motion for Summary Judgment or, in the alternative, stay this action pending resolution of the Underlying Action, and grant such additional relief as the Court deems proper.

Respectfully submitted this the 25th day of April, 2012.

/s/ Jeffrey D. Patton
Jeffrey D. Patton (N.C. Bar No. 21246)
jpatton@spilmanlaw.com
Erin Jones Adams (N.C. Bar No. 36858)
eadams@spilmanlaw.com
Spilman Thomas & Battle
110 Oakwood Drive, Suite 500
Winston-Salem, NC 27103
Telephone: (336) 725-4710
Facsimile: (336) 725-4476

*Counsel for Defendant Chapter of Lambda Chi*

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## CIVIL ACTION NO.  1:09-cv-765

LIBERTY CORPORATE CAPITAL,
LTD.,

      Liberty,

v.

DELTA PI CHAPTER OF LAMBDA
CHI ALPHA, JOHN FERRELL
CASSADY, AND JOHN LEE
MYNHARDT,

      Defendants.

**CERTIFICATE OF SERVICE**

I, Jeffrey D. Patton, hereby certify that on April 25, 2012, I filed the foregoing Memorandum in Opposition to Liberty's Motion for Summary Judgment with the Clerk of the Court by electronic mail (due to CM/ECF system unavailability, per the *Electronic Case Filing Administrative Policies and Procedures Manual*, dated February 23, 2011, at P[1]), and I served the foregoing Memorandum in Opposition to Liberty's Motion for Summary Judgment on all counsel of record via electronic mail at the addresses below.

**Andrew Fitzgerald, Esq. — afitzgerald@sandflaw.corn**
**Stanley B. Green, Esq. — sgreen@sandflaw.com**
**Michael Scott Petty, Esq. — mpetty@rnichaelpettylaw.com**
**Richard L. Pinto, Esq. — rpinto@pckb-law.com**
**A.L. Butler Daniel, Esq. — bdaniel@butlerdaniellaw.com**
**Anne M. Haynes — hayesannemarg@aol.com**
**Gregory Arthur Wendling — gwendling@triad.rr.com**

/s/ Jeffrey D. Patton
Jeffrey D. Patton (N.C. Bar No. 21246)

21