UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LIBERTY CORPORATE CAPITAL, LTD., )
    Plaintiff, )
                                        )
                v. )                        No.: 1:09cv765
                                        )
DELTA PI CHAPTER OF LAMBDA CHI )
ALPHA, JOHN FERRELL CASSADY, )
and JOHN LEE MYNHARDT, )
    Defendants. )

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

This matter is before the Court on summary judgment motions filed by Plaintiff Liberty Corporate Capital, Ltd. ("Liberty") against Defendants, the Delta Pi chapter ("the Chapter") of the Lambda Chi Alpha, Inc. fraternity ("the National Fraternity"), located at Elon University ("Elon"), and John Ferrell Cassady. At issue are Liberty's rights and obligations under a general liability insurance policy ("the Policy") issued to the National Fraternity, with respect to a lawsuit brought in North Carolina state court by Defendant John Lee Mynhardt against the Chapter and Mr. Cassady, a Chapter member.

I. **BACKGROUND**

    A. **The Policy**

The National Fraternity has been insured by Certain Underwriters at Lloyd's London ("Underwriters"), which includes Liberty, since around 1986. (Doc. 54-1 at 2.) In 1996, the National Fraternity negotiated with Underwriters to limit the coverage for individual chapter members and local chapters to reduce its insurance premiums. *Id.* at 2-3. In 2007, Underwriters issued the Policy at issue, listing Liberty as the controlling subscribing underwriter, for the

period of February 1, 2007, to February 1, 2008. (Doc. 54-3 at 1, 4.) The National Fraternity is listed as the "First Named Insured," with the only other "Named Insureds" listed as The Lambda Chi Alpha Educational Foundation, Inc., Lambda Chi Alpha Educational Foundation, Inc., and Lambda Chi Alpha Properties, Inc. *Id.* at 9. The Policy contains an endorsement specifying that undergraduate members and chapters are "insureds,"

> but only while acting in accordance with the "Named Insureds" policies and procedures and their own policies and procedures, and only while acting within the scope of their duties, and only with respect to their liability for activities performed by them on behalf of the "Named Insureds", or of insured "Chapters", "Colonies", "Housing Organizations", or "Alumni Organizations."

*Id.* at 35-36. The Policy further excludes coverage "for any claim arising out of or in any way resulting from any 'Assault and / or Battery,'" *id.* at 64, and "for any claim arising out of or in any way resulting from any 'Violation' of 'Fraternity Alcohol Policy'." *Id.* at 65.

### B. The Undisputed Facts

In the early morning hours of February 3, 2007, Mr. Mynhardt, an Elon student, attended a party at Mr. Cassady's house. (Doc. 1-2 at 4-5.)[1] Mr. Cassady was also an Elon student, and he was serving as Vice President of the Chapter. (Doc. 1-2 at 4; Doc. 63-2 at 1.) The party was not registered with the National Fraternity or Elon and was open to the public, there was unrestricted access to a keg of beer, including to those who were underage, and Mr. Cassady and the other hosts did not employ professional security. (Doc. 1-2 at 5; Doc. 54-12 at 2-3.)

Shortly after arriving at the party, Mr. Mynhardt and a female student went into the bathroom. (Doc. 1-2 at 5.) While there is some dispute about exactly what happened next, it is undisputed that Clinton Joseph Blackburn, who was not a Chapter member, attempted to forcibly remove Mr. Mynhardt from the party. *Id.* at 6. He was assisted or encouraged to some degree

---

[1] Exhibit B to the Complaint is notated on the docket sheet as Doc. 1-2, but is itself stamped as Doc. 1-3. This opinion refers to this exhibit as Doc. 1-2.

by Mr. Cassady. *Id.* During the process, Mr. Mynhardt either fell or was thrown to the kitchen floor. (*Id.*; Doc. 54-11 at 11-13.) Mr. Mynhardt was injured and unable to move, so Mr. Cassady and Mr. Blackburn dragged or carried him outside. (Doc. 1-2 at 6; Doc. 54-15 at 23-25.) As a result of the incident, Mr. Mynhardt's neck was broken, and he was paralyzed. (Doc. 1-2 at 6; Doc. 54-17 at 3-5.)

## II. PROCEDURAL HISTORY

Mr. Mynhardt filed suit in Alamance County Superior Court against Elon, the National Fraternity, the Chapter, and several Chapter members, including Mr. Cassady, claiming negligence, willful and wanton conduct, and gross negligence. (Doc. 1-2 at 10-26.) Several Chapter members settled, and the National Fraternity, Elon, and one of the Chapter members prevailed on summary judgment. (Doc. 65-8.) The Chapter and Mr. Cassady remain in the case. (*See* Doc. 54 at 8; Doc. 65 at 2-3.) Liberty undertook a defense of the Chapter pursuant to a reservation of rights. (*See* Doc. 54-27 at 2.) Liberty also reserved its rights with respect to Mr. Cassady, but did not undertake his defense. (*See* Doc. 54-26.)

Liberty filed this declaratory judgment action against the Chapter, Mr. Cassady, and Mr. Mynhardt on October 2, 2009.[2] In its complaint, Liberty sought a declaration that the Chapter and Mr. Cassady are not entitled to a defense or indemnity, as they do not qualify as "insureds," and as Mr. Mynhardt's claims are excluded pursuant to the policy. As to Mr. Cassady, Liberty alternatively sought a declaration that it is only liable to provide excess insurance coverage. In his February 12, 2010 answer, Mr. Cassady counterclaimed for coverage, requesting a declaration that Liberty has a duty to defend and indemnify him under the policy. Liberty has now filed motions for summary judgment against the Chapter and Mr. Cassady.

---

[2] Liberty named various other individuals in its complaint; they have since been voluntarily dismissed from this action. (*See* Docs. 1, 10, 27, 33, 34.)

3

## III. LAW AND ANALYSIS

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party seeking summary judgment bears the initial burden of establishing "the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).[3] The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Under North Carolina law,[4] construction of insurance language is a question of law. *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970). "As the language of the policy is the clearest indicator of the parties' intentions, where the policy is unambiguous, it must be presumed the parties intended what the language used clearly expresses, and the policy must be construed to mean what on its face it purports to mean." *Integon Nat'l Ins. Co. v. Phillips*, __ N.C. App. __, __, 712 S.E.2d 381, 383 (2011)

---

[3] The language of Rule 56 was amended effective December 1, 2010; however, the substance of the rule did not change and the movant's burden remains the same.

[4] The parties agree that North Carolina law applies in this diversity action. *See Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) ("A federal court hearing a diversity claim must apply the choice-of-law rules of the state in which it sits."); *Fortune Ins. Co. v. Owens*, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000) ("With insurance contracts the principle of *lex loci contractus* mandates that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract.").

(internal quotation marks, citations, and alterations omitted).  When a policy term is fairly and reasonably susceptible to more than one interpretation, it is ambiguous and should be construed strictly in favor of coverage.  *Pa. Nat'l Mut. Cas. Ins. Co. v. Triangle Paving, Inc.*, 973 F. Supp. 560, 563 (E.D.N.C. 1996).  A party seeking benefits has the burden of establishing coverage under an insurance policy; however, the insurer bears the burden of showing that an exclusion applies.  *Kruger v. State Farm Mut. Auto. Ins. Co.*, 102 N.C. App. 788, 790, 403 S.E.2d 571, 572 (1991).  All exclusions, conditions, and limitations on coverage are strictly construed in favor of coverage.  *S. Fire & Cas. Co. v. Kirby's Garage, Inc.*, 162 N.C. App. 124, 127, 590 S.E.2d 1, 3 (2004).

An insurer's duty to defend is broader than its duty to indemnify, and "is based on the coverage contracted for in the insurance policy."  *Mastrom, Inc. v. Cont'l Cas. Co.*, 78 N.C. App. 483, 484, 337 S.E.2d 162, 163 (1985).  Thus, in determining whether an insurer has a duty to defend, a court should "apply the comparison test, reading the policies and the complaint side-by-side to determine whether the events as alleged are covered or excluded."  *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, LLC*, 364 N.C. 1, 6, 692 S.E.2d 605, 610 (2010) (internal quotation marks and alterations omitted).  "Conversely, in determining whether an insurer has a duty to indemnify, the facts as determined at trial are compared to the language of the insurance policy."  *Id.* at 7, 692 S.E.2d at 611.  Of course, if there is no duty to defend, there is no duty to indemnify "because the allegations, even when taken as proved, would fall outside the policy's coverage."  *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004).

The endorsement in this case unambiguously extends coverage to local chapters and individual fraternity members <u>only</u> when they act (1) in accordance with the procedures outlined by the Policy and the National Fraternity; (2) within the scope of their duties; <u>and</u> (3) on behalf

5

Case 1:09-cv-00765-CCE-LPA   Document 82   Filed 08/13/12   Page 5 of 9

of the National Fraternity or the Chapter.  All three requirements must be met before a Chapter or member is an "insured," as the endorsement unequivocally uses the conjunctive.  (Doc. 54-3 at 35-36.)

The Court assumes without deciding that these requirements function and should be interpreted as an exclusion, that Liberty has the burden to show that the Chapter and Mr. Cassady do not meet at least one of the requirements, and that the Policy should be strictly construed in favor of coverage.  *See Carolina Materials, LLC v. Cont'l Cas. Co./CNA Ins. Cos.*, 2009 WL 1346121, at *4 (W.D.N.C. May 12, 2009) (finding language in an endorsement to be an exclusion); *but cf. Hobson Constr. Co. v. Great Am. Ins. Co.*, 71 N.C. App. 586, 590, 322 S.E.2d 632, 635 (1984) (holding that the party seeking coverage "has the burden of bringing itself within the insuring language of the policy").  Applying these assumptions, Liberty has established by undisputed evidence that the Chapter and Mr. Cassady do not satisfy the first of the Policy's three requirements.

The events forming the basis for Mr. Mynhardt's claims, both as Mr. Mynhardt alleges they occurred and as the evidence in the state court action established without dispute, all occurred at a party which was not held "in accordance with the [National Fraternity's] policies and procedures."  The Fraternity's official policies explicitly prohibit bulk distribution of alcohol, underage drinking, and sponsorship of "any activity that is classified as an 'open party' that is characterized by unrestricted and/or public access to alcoholic beverages." (Doc. 54-5 at 3; Doc. 54-7 at 6.)  The Fraternity also requires that members ask all party guests for proof of age before providing the guests with alcohol and provide adequate professional security and sober party monitors.  (Doc. 54-7 at 7.)  It is undisputed that none of these policies were followed by those hosting this party.

6

In the underlying complaint, Mr. Mynhardt alleged that the party was open to the public and that Mr. Cassady and the other hosts provided unrestricted access to alcohol in bulk. (Doc. 1-2 at 5.) There is no evidence to the contrary; indeed, all the evidence from the state court liability action is consistent with this allegation.[5] (Doc. 54-11 at 4; Doc. 54-12 at 2-3; Doc. 65-4 at 14, 16-17.) Additionally, the undisputed evidence shows that Mr. Cassady and the other Chapter members did not provide professional security or party monitors. (Doc. 54-12 at 3; Doc. 54-14 at ¶ 22-23; Doc. 54-23 at 6.) In fact, the removal of Mr. Mynhardt unequivocally conflicted with the Fraternity's security policy, which provides that "[a]dequate professional security should be provided to collect car keys at the door, *deal with uninvited guests, and monitor any other potential problems*." (Doc. 54-7 at 7) (emphasis added).

The Chapter and Mr. Cassady contend that summary judgment is improper because there is a genuine factual dispute over whether the party was a fraternity event. As noted above, all three of the endorsement's requirements must be met before a Chapter or member is an "insured"; the endorsement unequivocally uses the word "and." Even assuming Mr. Cassady was acting within the scope of his duties as Vice President and on behalf of the Chapter and/or the National Fraternity in hosting the party, he and the Chapter were not acting "in accordance with" the specified policies and procedures when they held the party, and thus they do not qualify as "insureds" under the Policy.

The Defendants also contend that the Policy requires that the failure to comply with Fraternity policies and procedures must be the sole proximate cause of Mr. Mynhardt's injuries before coverage is excluded, and that Liberty has not established that degree of causation. The Chapter's reliance on *Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 176 N.C. App. 83, 88, 625

---

[5] Mr. Mynhardt himself has no connection with the Chapter, and it is undisputed that he was not invited to attend the party. (Doc. 1-2 at 4-5; Doc. 54-11 at 9.)

7

S.E.2d 622, 625 (2006), is misplaced.  In *Builders*, the North Carolina Court of Appeals interpreted a policy provision excluding claims for "'[b]odily injury' or 'property damage' *arising out of* the ownership, maintenance, use or entrustment to others of any aircrafts, 'auto' or watercraft owned or operated by or rented or loaned to any insured." *Id.* at 88-89, 625 S.E.2d at 624-25 (emphasis added).  In doing so, the court applied North Carolina's requirement that an injury "arising out of" excluded conduct must be separately and proximately caused by the conduct itself before the exclusion applies.  *Id.*; *see Nationwide Mut. Ins. Co. v. Davis*, 118 N.C. App. 494, 499-501, 455 S.E.2d 892, 895-96 (1995); *Wilkins v. Am. Motorists Ins. Co.*, 97 N.C. App. 266, 269-71, 388 S.E.2d 191, 193-94 (1990).   In this case, however, the endorsement does not contain the same kind of language as the *Builders* policy.  Since the endorsement includes neither "arising out of" language nor any other proximate causation requirement, the Court declines to read one into its unambiguous terms.  *See S. Fire*, 162 N.C. App. at 126-27, 590 S.E.2d at 3 (holding that the most fundamental rule of insurance policy constructions "is that the language of the policy controls").

The Defendants also contend that the "insureds" endorsement as written renders the policy illusory by excluding coverage for any reasonably expected set of circumstances.  While the National Fraternity's policies are extensive and comprehensive, they do not impose restrictions with which it would be impossible for the Chapter and its members to comply.  This was not a party that violated fringe or minor provisions of the Fraternity's policies; in throwing an open, unsecured party with unrestricted access to alcohol in bulk, the Chapter members blatantly violated numerous policies.  Moreover, "narrow coverage in and of itself is not illusory."  *Wake Cnty. Hosp. Sys., Inc. v. Safety Nat'l Cas. Corp.*, 127 N.C. App. 33, 43-44, 487

8

S.E.2d 789, 795 (1997). There is no showing that the only activity of the Chapter is off-campus open drinking parties.

Because the Chapter and Mr. Cassady were not acting in accordance with the applicable policies and procedures when the relevant events occurred, they are not "insureds" under the contract of insurance and they are not entitled to defense or indemnity coverage. Therefore, Liberty is entitled to summary judgment as a matter of law. There being no factual issues that would benefit from resolution in the related state court proceeding, the Court declines to exercise its discretion to stay this declaratory judgment action as Mr. Mynhardt requests, (Doc. 67). *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 287-88 (1995) (holding that district courts have broad discretion in deciding whether to hear a declaratory judgment action).

For the foregoing reasons, it is ORDERED that Plaintiff's motions for summary judgment against John Ferrell Cassady (Doc. 53) and the Delta Pi Chapter of Lambda Chi Alpha (Doc. 55) are GRANTED. It is DECLARED that Liberty is not required under the Policy to defend John Ferrell Cassady or the Delta Pi Chapter of Lambda Chi Alpha at Elon University for claims made against them by John Lee Mynhardt. Mr. Mynhardt's motion to stay (Doc. 67) is DENIED.

This the 13th day of August, 2012.

_____
UNITED STATES DISTRICT JUDGE